## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L.F.O.P., E.C.C., and J.C.C.<br><br>*Plaintiffs*,<br><br>v.<br><br>**Alejandro Mayorkas**, Secretary<br>U.S. DEPARTMENT OF HOMELAND SECURITY, and<br>**Ur Mendoza Jaddou**, Director, U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>*Defendants*. | **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**<br><br>Case No.<br><br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs, by and through their undersigned counsel, bring this action and hereby allege as follows:

## INTRODUCTION

1. This case challenges the systemic refusal of the United States Citizenship and Immigration Services ("USCIS") to approve Plaintiffs' applications for employment authorization documents ("EADs"), in violation of federal regulations implementing the Immigration and Nationality Act ("INA").

2. Plaintiffs are young people who have escaped abuse, abandonment or neglect. In 1990, Congress deemed that children under age 21 and in need of protection required an opportunity to thrive and therefore established the Special Immigrant Juvenile Status ("SIJS") program to provide them protection via a means to attain secure immigration status, thus stabilizing their

1

lives. Under the SIJS provisions of the INA, state court judges with jurisdiction and expertise regarding juvenile matters may make specific findings about whether a child has been subjected to abuse, abandonment or neglect, the harm suffered, and whether return to a home country is in the child's best interest. 8 U.S.C. § 1101(a)(27)(J). Based on these findings, the SIJS provisions allow such a child to self-petition for permanent immigration status by filing a "Form I-360" with USCIS.  Approval of an I-360 self-petition enables the child to seek adjustment of status to lawful permanent residence and, ultimately, U.S. citizenship. Numerous legal requirements applicable to other noncitizens[1] are statutorily waived for these children, as described in the Legal Background section *infra*.

3.  Despite the enhanced protection Congress accorded them, SIJS beneficiaries of approved I-360 petitions, unlike other noncitizens with pending and/or approved applications, are uniquely denied the opportunity to obtain an EAD following approval of their petitions.  Defendants' policies and practices for administering the SIJS program have shut these SIJS beneficiaries out of all access to employment authorization documents, despite the lack of any Congressional mandate to do so and despite the harm that may result for these beneficiaries. Without EADs, SIJS beneficiaries may not work lawfully, and their recovery from the abuse, abandonment and neglect they have suffered is obstructed by that inability, as well as by the inability to obtain other benefits for which an EAD is often essential - such as a driver's license or state

---

[1] Consistent with a new federal policy of avoiding the pejorative use of the word "alien" unless required in quoting statutory language, Plaintiffs herein use the terms "noncitizen" or "immigrant" to denote a person who is not a citizen of the U.S. *See* Tae D. Johnson *Interim Guidance: Civil Immigration Enforcement and Removal Priorities*, U.S. Immigr. and Customs Enf't (2021), https://www.ice.gov/doclib/news/releases/2021/021821_civil-immigration-enforcement_interim-guidance.pdf; *see also, U.S. Citizenship Act, H.R.1177, 117th Cong. (2021),* https://www.congress.gov/bill/117th-congress/house-bill/1177/text.

identification card, a social security number, in-state tuition at public colleges and universities, and certain scholarships and financial aid for higher education.

4. Defendants' policies and practices misinterpret their own EAD regulations, which allow EADs for individuals who have been "paroled" (i.e., under the immigration law parole classification conferring authority to be present in the U.S.) pursuant to 8 C.F.R. § 274a.12(c)(11). Because SIJS beneficiaries are deemed to have been paroled as a matter of law, *see* 8 U.S.C. § 1255(h), they are eligible for EADs according to this regulation. Defendants' refusal to provide them EADs pursuant to this regulation is contrary to its plain meaning and therefore unlawful under the Administrative Procedure Act ("APA"). Without an articulated, reasoned basis, Defendants have also denied them access to any alternative EAD mechanisms, including regulatory and subregulatory provisions that Defendants have made available to similarly situated victims of harm and other lawfully present immigrants. By failing without a reasoned explanation to provide a mechanism by which these SIJS beneficiaries might obtain employment authorization, Defendants have acted in a manner that is arbitrary and capricious, an abuse of discretion, and not in accordance with law and is therefore violative of the Administrative Procedure Act.

5. These policies, practices, conduct, and failures to act have harmed Plaintiffs, who cannot work lawfully or access certain benefits and services that can help them heal and become fully productive members of society. They seek injunctive and declaratory relief against Defendants' misadministration of the SIJS program, regulations, and laws in the unlawful manner described herein.

## JURISDICTION AND VENUE

6. This case arises under the APA, 5 U.S.C. § 701, *et. seq.* This Court has jurisdiction

pursuant to 28 U.S.C. § 1331 as a civil action arising under the laws of the United States. This Court also has the authority to grant declaratory relief under 28 U.S.C. §§ 2201-02 and injunctive relief under 5 U.S.C. § 702 and 28 U.S.C. §§ 1361-62. The United States has waived sovereign immunity under 5 U.S.C. § 702.

7.  Pursuant to 28 U.S.C. §§ 1346(a)(2) and 1361, this Court also has original subject matter jurisdiction because this action is filed against officers of a United States agency.

8.  Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and because Plaintiffs reside in this judicial district.

9.  This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1391(e)(1), because Defendants are agencies and officers of the United States.

## PARTIES

10.     Plaintiff L.F.O.P.  is a 23 year old noncitizen from Honduras with a Special Immigrant Juvenile Status I-360 petition that was approved by USCIS on February 6, 2020. See Exhibit 1. In April 2021, he filed an I-765 Employment Authorization application under category (c)(11) of 8 C.F.R. § 274a.12(c), which remains pending. *See* Exhibit 2.

11.     Plaintiff E.C.C is a 20 year old noncitizen from Guatemala with a Special Immigrant Juvenile Status I-360 petition that was approved by USCIS on April 28, 2021. *See* Exhibit 3. In August 2021, he filed an I-765 Employment Authorization application under category (c)(11) of 8 C.F.R. § 274a.12(c), which remains pending. *See* Exhibit 4.

12.     Plaintiff J.C.C is a 18 year old noncitizen from Guatemala with a Special Immigrant Juvenile Status I-360 petition that was approved by USCIS on April 21,2021. She

filed an I-765 Employment Authorization application under category (c)(11) of 8 C.F.R. § 274a.12(c), which remains pending.  *See* Exhibit 6.

13.     Defendant Department of Homeland Security ("DHS") is an executive department of the United States government overseeing many immigration- based component parts, including USCIS.

14.     Defendant Alejandro Mayorkas is sued in his official capacity as Secretary of DHS. In this capacity he directs each of the component agencies within DHS including USCIS and is responsible for the administration of the immigration laws.

15.     Defendant USCIS is a component agency of DHS and shares responsibility for the implementation of the INA and other immigration- related laws of the United States. USCIS is specifically tasked with the adjudication of immigration benefits, which includes the processing of applications for permanent residence, immigrant petitions, applications for asylum, applications for naturalization, applications for Special Immigrant Juvenile Status, and applications for employment authorization.

16.     Defendant Ur Mendoza Jaddou is sued in her official capacity as Director of USCIS.

## **LEGAL BACKGROUND**

17.     Congress amended the INA in 1990 to  confer "special immigrant" status on immigrants "declared dependent on a juvenile court located in the United States and . . . deemed eligible by that court for long-term foster care," and for whom ". . . it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality…" Pub. L. No. 101-649 § 153, 104 Stat. 4978 (1990) (amending 8 U.S.C. §1101 by adding the language as subsection (a)(27)(J)). Subsequent amendments to the INA in 1991 and

2008 removed numerous inadmissibility barriers for SIJS beneficiaries seeking adjustment of status and also relaxed and clarified some eligibility requirements, which helped to expedite the adjudication process. *See* Miscellaneous and Technical INA Amendments of 1991, Pub. L. No. 102-232, § 245, 105 Stat. 1733 (1991) and William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 235, 122 Stat. 5044, 5079 (2008) ("TVPR").

18.    A SIJS beneficiary is eligible for status until age 21, 8 C.F.R. § 204.11( c)(1), and the 2008 TVPR clarified that the applicant's eligibility is dependent on age at the time the individual files for SIJS classification with USCIS. *See* Pub. L. No. 110-457, § 235(d)(6), 122 Stat. 5044, 5079 (2008). Implementing regulations enacted by Immigration and Naturalization Service ("INS") in 1993 left the determination as to whether an immigrant was an eligible juvenile within the meaning of the SIJS statute to state law and defined the juvenile courts empowered to make such determinations. 8 C.F.R. §§ 101.6(a) and (c)(1) (1993).

19.    The system established to attain SIJ status and ultimately permanent residence after a state court determination requires two steps. First, the juvenile must file a Form I-360 petition that USCIS must approve.  *See* USCIS Policy Manual, vol. 6, pt. J, Ch. 3, *available at* https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-3 (last visited on September 20, 2021). Secondly, SIJS approval establishes eligibility to apply for adjustment of status to lawful permanent residence. *See* 8 U.S.C. § 1255.

20.    Once granted, apart from limited circumstances that trigger automatic revocation, SIJS may not be revoked except "on notice," 8 C.F.R. § 205.2, and upon compliance with procedural safeguards: USCIS must find "good and sufficient cause" for revocation; the agency must provide notice of intent to revoke; and the SIJ designee must be given the

opportunity to present evidence opposing revocation. 8 U.S.C. § 1155; *see also* 8 C.F.R. § 205.2; 7 USCIS Policy Manual, pt. F, ch. 7 (Mar. 21, 2018); *Osorio-Martinez v. Attorney Gen. U.S.*, 893 F.3d 153, 163-64 (3d Cir. 2018).

21.     Together, the statutory SIJS provisions encapsulate Congress' intent to permanently protect noncitizen juveniles who cannot reunify with parents because of abuse, neglect or abandonment and whose return to their home country would be contrary to their best interests. *See* Pub. L. No. 110-457, § 235(d), 122 Stat. 5044, 5079 (2008) ["*Permanent* Protections for Certain At-Risk Children"](*emphasis added.)*

22.     With regard to employment authorization, there are no statutory bars to EAD issuance for SIJS beneficiaries of approved I-360s, yet Defendants' EAD regulations have omitted them as a specific category from the list of approximately 60 other categories of noncitizens eligible for an EAD. *See generally,* 8 U.S.C. § 274a.12.

23.     Defendants' regulations do include an EAD category for *paroled* immigrants, as noted above, with limited exceptions not applicable to SIJS beneficiaries. *See* 8 C.F.R. § 274a.12(c)(11) ("paroled alien EAD regulation.")

24.     Individuals with an approved SIJS I-360s are categorically deemed to "have been paroled" into the United States as a matter of law for purposes of adjusting status to lawful permanent resident, according to 8 USC § 1255(h). *See also,* 8 C.F.R § 245.1(a).

25.     Defendants' policy, however,  is to treat SIJS parolees as not paroled for purposes of the paroled alien EAD regulation. In its letters rejecting employment applications, Defendants state that USCIS grants employment authorization under 8 CFR § 274a.12(c) (11) to applicants who are in parole status as evidenced by a valid Form I-94, Arrival/Departure Record, a document which is not provided to those individuals granted SIJS. *See* Exhibit 7

(KIND Declaration, para. 4).  Similarly, in a Motion to Dismiss the complaint filed in *Godinez v. DHS,* a lawsuit similar to this one, Defendants assert: "Plaintiffs are not 'parolees' for the purposes of membership in the class of individuals entitled to apply for employment authorization." *See* Motion to Dismiss at 1, *Godinez et al. v. U.S. Dep't of Homeland Sec. et al.,* No. 4:20-cv-00828-GAF (W.D. Mo. Oct. 20, 2020), ECF 15.  Additionally, in their Reply Brief In Support of the same Motion to Dismiss, Defendants assert, ""SIJs, 8 U.S.C. § 1101(a)(27)(J), do not receive humanitarian parole, nor are they "deemed" to receive humanitarian parole" (citing to 8 U.S.C. § 1255) and further assert that "Plaintiffs fail to allege facts that would put them in a class of individuals eligible for work authorization. *Cf.* 8 C.F.R.  § 274a.12(c)(11)."  *See* Reply Brief at 1*, Godinez et al. v. U.S. Dep't of Homeland Sec. et al.,* No. 4:20-cv-00828-GAF (W.D. Mo. Dec. 1, 2020), ECF 19-20.

26.     These interpretations are not set forth in the language of the regulation itself. Nor are they set forth in the form of written policy statements issued by USCIS.  On the contrary, the cited regulation identifies specific paroled individuals who are prohibited from obtaining an EAD in the paroled alien category, and SIJ beneficiaries are not identified there.  *See* 8 C.F.R. § 274a.12(c)(11).

27.     Defendants only permit SIJs beneficiaries with approved I-360s to obtain an EAD if independently eligible in another EAD category, such as if the beneficiary is also an applicant for asylum or for adjustment of status to lawful permanent residence. *See* 8 C.F. R. § 274a.12(c)(8) and (c)(9).

28.     To issue an EAD under 8 C.F.R. § 274a.12(c)(11) to a SIJS beneficiary, Defendants require an I-94 document evidencing parole status. *See* Exhibit 7 (KIND Declaration, para. 4).

29.     Defendants' published SIJS-related policies, however, do not allow issuance of I-94 parole documents to SIJS beneficiaries of approved I-360s who are paroled as a matter of law under 8 U.S.C 1255(h)(1).

30.     Defendants do not issue I-94 documents to these beneficiaries as a matter of practice. *See* Exhibit 7 (KIND Declaration, para. 4-5).

31.     Defendants' SIJS-related policies provide no alternative means by which a SIJS beneficiary with an approved I-360 who is paroled under 8 U.S.C. § 1255(h)(1) may be issued an EAD *on that basis*.

32.     Such alternative means to qualify SIJS beneficiaries for EADs include, but are not limited to, the provision of Deferred Action status upon SIJS approval, which would qualify them for EADs in the Deferred Action category, 8 C.F.R. § 274a.12(c)(14). Defendants have deployed this alternative for certain victims of violence such a U-visa beneficiary and a Violence Against Women Act ("VAWA") applicant, but not for SIJ beneficiaries who are themselves proven victims of abuse, abandonment or neglect.

33.     Defendants have utilized other administrative alternatives to provide EAD eligibility to categories of noncitizens who are not expressly listed in their EAD regulations, such as permitting the submission of an application for status to be held in abeyance pending a formal filing, which would then qualify the individual for an EAD under an application pending category.

34.     In the thirty years since Congress established the SIJS program, none of Defendants' SIJS-related policy documents have addressed the employment authorization needs of SIJS beneficiaries with an approved I-360 who cannot file for adjustment of status immediately due to visa backlogs, or any other reason, and therefore cannot avail themselves

of independent routes to an EAD like the applicant for adjustment of status to permanent resident category.

35.    The denial of access to *any* means of obtaining lawful employment authorization thwarts the protective humanitarian purposes of the statutory SIJS provisions, as described above. SIJS beneficiaries, who are categorically victims of abuse, neglect, or abandonment, often need access to health care and productive activity such as valid employment or a college education in order to recover from their traumas and make effective use of the right to seek permanent status in the U.S. that Congress has given them.

36.    SIJS young people without an EAD may be denied the ability to pursue higher education, as many states bar individuals without such documentation from merit and/or need-based scholarships and/or reduced or "in-state" tuition at state colleges and universities. *See Laws and Policies Improving Access to Higher Education for Immigrants*, National Immigration Law Center (last updated July 2021).

https://www.nilc.org/wp-content/uploads/2017/10/table-access-to-ed-toolkit.pdf. In Massachusetts, for example, a high school student who performs highly enough on the state's MCAS examination to win the John and Abigail Adams Scholarship, which provides free tuition at any state college, university, or community college for eight semesters, must be authorized to live *and work* in the U.S., if a noncitizen, in order to actually receive the scholarship. *See John and Abigail Adams Scholarship*, Massachusetts Department of Elementary and Secondary Education (last updated June 22, 2021),

https://www.doe.mass.edu/scholarships/adams_.html. Additionally, eligibility for other Massachusetts state aid and scholarship programs may be easier to establish with an EAD, a secure and standardized federal immigration document recognized by state agencies and

colleges.

37.     Additionally, although SIJS beneficiaries with approved I-360s are deemed "lawfully present" for federal Affordable Care Act purposes under HHS policy, s*ee* 42 U.S.C.A. § 18081(b)(i)(I) and 45 C.F.R. § 152.2, SIJS beneficiaries without EADs face barriers in accessing such care. For example, obtaining a driver's license that may be needed to drive to medical or therapy appointments the ACA coverage is meant to allow may be difficult, inasmuch as Massachusetts requires proof of a social security number to obtain a driver's license, and eligibility for an SSN requires employment authorization, with limited exceptions for certain public benefits. *See* 540 C.M.R. 2.06(3) §§ (b)(3) and (c)(3); 20 C.F.R. § 422.105; 20 C.F.R. § 422.107.

38.     The lack of an EAD prevents SIJS beneficiaries from working lawfully, 8 U.S.C.A. § 1324a, and those who go to work in the underground economy face the risk of exploitation, labor abuses and other abuses. This vulnerable position is contrary to the core Congressional purpose in creating the Special Immigrant Juvenile Status program in 1990, to provide legal status to children who had been subject to abuse, neglect, and/or abandonment by one or both of their parents, so that they could remain in safety and security in the U.S. and avoid return to the places where they had suffered. *See* Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 49786  (1990).  In order to ensure that protected juveniles would no longer be in such vulnerable positions, Congress even waived most grounds of removability, so that the threat of deportation was eliminated and they could remain safely and securely in the U.S. until granted lawful permanent residence.  Pub. L. No. 101-649, § 153(b); *see also* 8  U.S.C. § 1227(c).

39.     The lack of work authorization for SIJS beneficiaries under the care and protection

11

of the Commonwealth's Department of Children and Families, furthermore, hampers the ability of the state of Massachusetts to realize its commitment to "assist older adolescents and young adults in their transition to independence and self-sufficiency" as well as the ability of certain SIJS beneficiaries in DCF custody to document participation in employment for which an EAD is required. *See* 110 C.M.R. § 23.00.

40.     For such reasons, the American Bar Association adopted a resolution supporting issuance of employment authorization to SIJS beneficiaries of approved petitions. *See* Am. Bar Ass'n, Resolution 103A  (adopted Feb. 22, 2021),

https://www.americanbar.org/content/dam/aba/directories/policy/midyear-2021/103a-midyear-2021.pdf.


## STATEMENT OF FACTS

41.     Plaintiff L.F.O.P. is a 23-year-old from Honduras. He came to the United States in search of safety and stability after being neglected by his mother. Plaintiff L.F.O.P.'s father died when he was only three years old and his mother did not adequately care for him. He did not have access to basic necessities and was forced to leave school at a young age to take a dangerous job in a clothing factory. In the United States, Plaintiff L.F.O.P. was able to return to school and eventually graduated from high school. In June 2019, the Massachusetts Worcester County Probate and Family Court entered special findings for him, including a finding that reunification with his mother was not viable due to neglect and that it is not in his best interest to return to Honduras. With the assistance of counsel, he filed an I-360 petition for Special Immigrant Juvenile Status, which USCIS approved on February 6, 2020. *See* Exhibit 1. Plaintiff was not issued an I-94 in conjunction with that approval. In April 2021, he

filed an I-765 application for employment authorization under category (c)(11), which remains pending and is likely to be denied based on the Defendants' policies, practices, conduct and failures to act as alleged herein. *See* Exhibit 2.

42.     Without employment authorization, Plaintiff L.F.O.P. has experienced numerous challenges. Even though he is 23 years old, not having employment authorization has prevented him from becoming fully self-sufficient. He is unable to obtain a social security number and a driver's license. Without a driver's license he is dependent on others for transportation. He is also prevented from reaching his goal of becoming an electrician by attending a regional vocational technical school, participating in the requisite apprenticeship program, and taking the licensing examination. Without work authorization and a social security number, he is unable to begin the apprenticeship required as the first step in the electrician licensing process. Apprenticeship programs require an employer and are thus unavailable to noncitizens without employment authorization - whom employers are forbidden from hiring. *See* Mass. Div. of Apprentice Standards, *Apply to become an apprentice in the trades* (last visited Sept. 17, 2021),

https://www.mass.gov/how-to/apply-to-become-an-apprentice-in-the-trades,, Mass. Div. of Apprentice Standards, *Apprenticeship sponsor policies* (last visited Sept. 17, 2021),

https://www.mass.gov/service-details/apprenticeship-sponsor-policies and

Mass. Dep't of Labor, *Department of Labor Standards regulations* (last visited Sept. 17, 2021), https://www.mass.gov/service-details/department-of-labor-standards-regulations. A social security number is also required to take the Class B electrician's license. *See* Mass. Board of State Examiners of Electricians, *Licensure Candidate Information* (last updated March 18, 2014),

https://www.mass.gov/doc/candidate-information-bulletin-vendor-information-application-ex
amination-process/download.

43.     Plaintiff E.C.C. came to the U.S. from Guatemala, after her parents had failed to

provide her with basic necessities and physical safety. Upon her arrival in the U.S., she was

placed with a sponsor in a dangerous, abusive, and exploitative situation. Following an

investigation, she was placed in the protective custody of the Massachusetts Department of

Children and Families (DCF), and at the Department's request, findings were entered on her

behalf in November 2020 by the Massachusetts Worcester County Juvenile Court, including a

finding that reunification with her parents was not viable due to abandonment and neglect, and a

finding that it is not in her best interest to return to Guatemala. With the assistance of counsel, she

then filed an I-360 petition for Special Immigrant Juvenile Status, which USCIS approved on

April 28, 2021. *See* Exhibit 3. Plaintiff was not issued an I-94 following that approval. In August

2021, she filed an I-765 application for employment authorization under category (c)(11), which

remains pending (*See* Exhibit 4) and is likely to be denied based on the Defendants' policies,

practices, conduct and failures to act as alleged herein.  She continues to reside in a voluntary

placement through DCF as she finishes her last year of high school, and she hopes to become a

pediatric doctor.


44.     Without an EAD, Plaintiff E.C.C. has suffered a number of hardships. She has been

unable to obtain a social security number or a driver's license and has been cut off from lawful

employment opportunities. She has faced additional obstacles to pursuing her education during

the pandemic, such as difficulties with online learning, language barriers, and financial pressures.

She also experiences stress as a result of not having an EAD, SSN, a driver's license, or a state

identification document. Although eligible for some financial support from DCF, otherwise known as YASP (Young Adult Support Payments), she cannot receive certain financial support or secondary education opportunities due to the lack of employment authorization and a social security number. She could also become eligible for vocational opportunities with an EAD. The lack of an EAD also prevents her from obtaining proof of her identity via a photo ID, as E.C.C. has been unable to obtain a Guatemalan passport to this date. Without an EAD or home country passport, she has difficulty accessing numerous services, documents, and benefits for herself that may require a photo I.D, and this imposes additional hardship on her.

45.     Plaintiff J.C.C. came to the U.S. from Guatemala after his parents had failed to adequately care for him. Upon his arrival in the U.S., he was placed with a sponsor, and that developed into an abusive situation. Following an investigation, J.C.C. was placed in the protective custody of the Massachusetts Department of Children and Families (DCF) and, at the Department's request, findings were entered on his behalf in March 2020 by the Massachusetts Worcester County Juvenile Court, including a finding that reunification with his parents was not viable due to abandonment and neglect, and a finding that it is not in his best interest to return to Guatemala. With the assistance of counsel, he then filed an I-360 petition for Special Immigrant Juvenile Status, which USCIS approved on April 21, 2021. *See* Exhibit 5. Plaintiff was not issued an I-94 following that approval. In August 2021, he filed an I-765 application for employment authorization under category (c)(11), which remains pending (*See* Exhibit 6) and is likely to be denied based on the Defendants' policies, practices, conduct and failures to act as alleged herein. He continues to reside in a voluntary placement through DCF in Worcester as he attends high school full-time and hopes to become an electrician.

46.     Without an EAD, Plaintiff J.C.C. has suffered a number of hardships. He has been

unable to obtain a social security number or a driver's license and has been cut off from lawful employment opportunities. He has faced additional obstacles to pursuing his education during the pandemic, such as difficulties with online learning, language barriers, and financial pressures. He also experiences stress as a result of not having an EAD, SSN, a driver's license, or a state identification document. Although eligible for some financial support from DCF, otherwise known as YASP (Young Adult Support Payments), he cannot receive certain support due to the lack of employment authorization and a social security number. He could also become eligible for vocational opportunities with an EAD. The lack of an EAD also prevents him from obtaining proof of his identity via a photo ID, as he has been unable to obtain a Guatemalan passport to this date. Without an EAD or home country passport, he has difficulty accessing numerous services, documents, and benefits for himself that may require a photo I.D, and this imposes additional hardship on him.

47.     As a result of Defendants' policies, practices, conduct, and failure to act as described herein, Plaintiffs have suffered irreparable harm.

## CLAIMS FOR RELIEF

### COUNT I: ADMINISTRATIVE PROCEDURE ACT,
### 5 U.S.C. § 702 *et. seq.*

### Failure to Comply with EAD Regulations

48.     Plaintiffs incorporate by reference each of the preceding paragraphs.

49.     Defendants' policies, practices, conduct, and failures to act as alleged herein violate 8 C.F.R. § 274a.12(c)(11) because they deny employment authorization to Plaintiffs, who are paroled by law, and such denial is contrary to the plain meaning of that regulation and without any basis in federal statute or regulation or USCIS' own written policies and

instructions.

50.     Defendants' policies, practices, conduct, and failures to act as alleged herein violate the APA,  5 U.S.C. § § 702 and 706, because they constitute agency action unlawfully withheld or unreasonably denied and are arbitrary, capricious, an abuse of discretion, and not in accordance with law.

51.     At all times relevant to this litigation, Defendants were acting under the color of the laws of the United States.

52.     Defendants' denial of employment authorization to Plaintiffs on the basis of Defendants' policies, practices, conduct and failures to act as alleged herein constitutes final agency action for which there is no other adequate remedy.

53.     Defendants' unlawful policies, practices, conduct and failures to act as alleged herein have deprived Plaintiffs of employment authorization and caused them to suffer substantial, ongoing, and irreparable harm for which there is no adequate remedy at law.

## COUNT II: ADMINISTRATIVE PROCEDURE
## ACT, 5 U.S.C. § 702 *et. seq.*

### Systemic Deficiencies in Administration of SIJS Program

54.     Plaintiffs incorporate by reference each of the preceding paragraphs.

55.     By failing without a reasoned explanation to provide Plaintiffs with access to any employment authorization mechanisms provided to other similarly situated immigrants, Defendants' policies, practices, conduct, and failures to act as alleged herein violate the APA,  5 U.S.C. § § 702 and 706, because they constitute agency action unlawfully withheld or

unreasonably denied and are arbitrary, capricious, an abuse of discretion, and not in accordance with law.

56.     At all times relevant to this litigation, Defendants were acting under the color of the laws of the United States.

57.     Defendants' policies, practices, conduct and failures to act as alleged herein constitute final agency action for which there is no other adequate remedy.

58.     Defendants' policies, practices, conduct, and failures to act as alleged herein have caused Plaintiffs to suffer substantial, ongoing, and irreparable harm for which there is no adequate remedy at law.  Plaintiffs have suffered irreparable harm entitling them to injunctive and declaratory relief.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.     Assume jurisdiction over this matter;

B.     Declare that Defendants' policies, practices, conduct, and failures to act as alleged herein violate Defendants' regulations, including 8 C.F.R. § 274a.12(c)(11).

C.     Declare that Defendants' policies, practices, conduct, and failures to act to administer the SIJS program without any access to employment authorization for approved I-360 beneficiaries as alleged herein are arbitrary and capricious, an abuse of discretion, and not in accordance

with law in violation of the APA;

D.    Preliminarily and permanently enjoin Defendants from denying or delaying issuance of employment authorization to Plaintiffs on the basis of Defendants' misinterpretation of Plaintiffs' parole status for purposes of 8 CFR § 274a.12(c)(11);

E.    Order Defendants to refrain from withholding employment authorization eligibility from Plaintiffs on any other lawful basis this Court finds applicable;

F.    Award attorneys' fees, costs, and interest under the Equal Access to Justice Act or as otherwise permitted by law; and

G.    Grant such further and other relief as may be just and proper.

Respectfully submitted this 21st day of September 2021,

*/s/ Susan B. Church*
Susan B. Church
BBO # 639306
DEMISSIE & CHURCH
929 Massachusetts Ave., Suite 01
Cambridge, MA 02139
(617) 354-3944
sbc@demissiechurch.com

*/s/ Deirdre Giblin*
Deirdre Giblin
BBO # 566547
Massachusetts Law Reform Institute (MLRI)
40 Court St. # 800
Boston, MA 02108
(617) 357-0700

dgiblin@mlri.org


*/s/ Iris Gomez*
Iris Gomez
BBO # 201000
Massachusetts Law Reform Institute (MLRI)
40 Court St. # 800
Boston, MA 02108
(617) 357-0700
igomez@mlri.org

*/s/ Mario Paredes*
Mario Paredes
BBO # 704644
Massachusetts Law Reform Institute (MLRI)
40 Court St. # 800
Boston, MA 02108
(617) 357-0700
mparedes@mlri.org

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, Complaint, filed through the ECF system will be sent electronically on this 21st day of September to the registered participants as identified on the Notice of Electronic Filing (NEF).  Official service will occur pursuant to the court issued summons.   Paper copies will be sent to those parties now named that are non-registered participants by First Class Mail.

/s/ Susan B. Church
Susan B. Church
BBO # 639306
DEMISSIE & CHURCH
929 Massachusetts Ave., Suite 01
Cambridge, MA 02139
(617) 354-3944
sbc@demissiechurch.com