## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **L.F.O.P., et al.,** | ) | Case No. 4:21-cv-11556-TSH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MOTION TO STAY ALL** |
| | ) | **PROCEEDINGS** |
| **MAYORKAS, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants move to stay all deadlines for responsive pleadings, motions, discovery, and hearings pending USCIS's deliberations regarding a new process that will likely moot the allegations in this case. This case concerns the alleged USCIS policies regarding the granting of employment-authorization documents to individuals holding the Special Immigrant Juvenile ("SIJ") classification. USCIS is currently deliberating and developing a new process that will likely resolve the issues raised in this litigation. Therefore, pausing the litigation would serve judicial economy by avoiding litigation of potentially moot issues. USCIS proposes that, in the event that USCIS has not yet finalized its decision within 45 days of the date of this Motion, USCIS will file a status report.

Defendants have conferred about this Motion with counsel for Plaintiffs. Plaintiffs oppose this Motion. Therefore, Defendants unilaterally move this Court to stay all proceedings pending a final decision on USCIS's proposed process regarding employment authorization for SIJs.

Dated:  December 27, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

WILLIAM C. SILVIS
Assistant Director

/s/ Katelyn Masetta-Alvarez
KATELYN MASETTA-ALVAREZ
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 514-0120
E-mail:  katelyn.masetta.alvarez@usdoj.gov

*Counsel for Defendants*

**MEMORANDUM IN SUPPORT OF MOTION TO STAY ALL PROCEEDINGS**

## I.        INTRODUCTION

Defendants move this Court to stay all proceedings, including all responsive pleadings, briefing deadlines, hearings, and discovery, until Defendant U.S. Citizenship and Immigration Services (USCIS) completes its deliberations about an administrative process that will likely moot out Plaintiffs' claims. Plaintiffs, residents of Massachusetts who have been classified as Special Immigrant Juveniles (SIJs) and whose applications for an Employment Authorization Document (EAD) remain pending, challenge USCIS's "denial" of Plaintiffs' EAD applications and failure to create an EAD mechanism for SIJs. Am. Compl., ECF No. 10, at 18. However, as explained in the attached declaration by Kathryn Anderson, the Acting Deputy Chief of Policy and Strategy, USCIS is deliberating about an EAD process for SIJs and anticipates that it will reach a final decision concerning the contemplated process within 45 days. *See* Exhibit A. The proposed process will very likely provide the named Plaintiffs EADs (*id.*), thereby mooting Plaintiffs' claims. Because this case will likely become moot before the Court issues a decision on the merits of Plaintiffs' claims, this Court should stay all proceedings to preserve the Court's and the Parties' resources. In addition, to ensure that USCIS is able to apply the EAD process consistently to SIJs nationwide, this Court should refrain from issuing a decision about Plaintiffs' claims until USCIS has completed its decision-making.

Alternatively, Defendants request that this Court stay proceedings because Plaintiffs' claims are not yet ripe for review. The case is not fit for judicial review because Plaintiffs' claims rely on contingencies that have not yet occurred. Plaintiffs challenge USCIS's "denial" of their EAD applications; however, USCIS has not issued any decision on their applications. ECF No. 10 at 10. Further, because USCIS is deliberating about an EAD process that would apply to

Plaintiffs, Plaintiffs' challenge to USCIS's alleged failure to create an EAD mechanism for SIJs

is premature. In addition, Plaintiffs will not suffer hardship if this Court stays proceedings until

USCIS completes its decision-making process. Plaintiffs will remain classified as SIJs while they

await an immigrant visa, and USCIS will likely provide Plaintiffs with EADs based on its

proposed process before the Court issues a final decision on the merits. Accordingly, in the

interest of judicial economy and to avoid litigating unripe issues, this Court should stay all

proceedings until USCIS completes its decision-making about a new EAD process for SIJs.

## II.   BACKGROUND

### A. Factual Background

Plaintiffs L.F.O.P., E.C.C., and J.C.C. are individuals who have been classified as SIJs

and who have applied for EADs based upon their alleged status as "parolees." ECF No. 10

¶¶ 17–19. Plaintiffs intend to represent a putative class consisting of "all individuals in

Massachusetts with approved [SIJ] Petitions whose applications for EADs, as SIJs, have been

denied, are pending or will be filed." *Id.* ¶ 24. All three of the named Plaintiffs' applications for

EADs remain pending. *Id.* ¶¶ 17–19.

Plaintiffs argue they are eligible for EADs as individuals who were "paroled" into the

United States for "urgent humanitarian purposes." *Id.* ¶¶ 6–10. In support of their proposition,

Plaintiffs cite to two separate legal authorities: 8 U.S.C. § 1255(H)(1)—which deems SIJs to be

parolees for the purpose of adjustment of status[1]—and 8 C.F.R. § 274a.12(c)(11), the regulation

permitting USCIS to grant employment authorization to individuals "paroled" for "urgent

humanitarian purposes." *Id.* Based upon these two unrelated legal authorities, Plaintiffs argue

---

[1] "Adjustment of status" refers to the process of a noncitizen adjusting their immigration status to the status of a lawful-permanent resident.

that USCIS's "denial" of their EAD applications and failure to provide Plaintiffs "access to any employment authorization mechanisms" violate the Administrative Procedure Act (APA). *Id.*, ¶¶ 59–68.

### B. Legal Background

     i.     *The meaning of parole under 8 U.S.C. § 1255(H)(1)*

Parole in the immigration context has a specific meaning: it is an "entry fiction" wherein a paroled noncitizen is considered to be "standing at the border" despite being permitted to physically enter the country. *Michel v. Mayorkas*, No. 1:20-CV-10882-IT, 2021 WL 797810, at *7 (D. Mass. Mar. 2, 2021) (citing *Leng May Ma v. Barber*, 357 U.S. 185 (1958)). The Supreme Court has explained that parole "is simply a device through which needless confinement is avoided while administrative proceedings are conducted." *Leng Mey Ma*, 357 U.S. at 190. However, granting parole "was never intended to affect a [non-citizen's] status . . . ." *Id.*

Generally, to qualify for lawful-permanent residence under 8 U.S.C. § 1255, an individual must have been "inspected and admitted" or "paroled" into the United States. 8 U.S.C. § 1255(a). Many SIJs entered the United States unlawfully, and thus were neither "inspected and admitted," nor "paroled" in accordance with this eligibility requirement for lawful-permanent residence. Congress therefore created a special statutory provision to ensure that the many SIJs who entered the U.S. unlawfully would nonetheless be eligible for lawful-permanent residence. 8 U.S.C. § 1255(H)(1). Under this section, SIJs "shall be deemed, for the purposes of [admission or parole under 8 U.S.C. § 1255(a)], to have been paroled into the United States[.]" *Id.* § 1255(H)(1). The statute, however, is silent about employment authorization for SIJs. *See generally id.*

3

ii. *Immigrant-Visa Backlog for SIJs*

Although Congress removed the "admitted or paroled" barrier for SIJs, Congress chose not to remove another hurdle to applying for lawful-permanent residence: the availability of immigrant visas. Congress placed a cap on the number of immigrant visas available to SIJs each year. 8 U.S.C. §1153(b)(4). Consequently, SIJs from certain countries that have more SIJs than available visas (Honduras, El Salvador, Guatemala, and Mexico) must wait several months, or sometimes years, before an immigrant visa is available to them. *See* Dep't of State, December 2021 Visa Bulletin, Employment Based Preferences (Fourth), https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2022/visa-bulletin-for-december-2021.html. Because of the immigrant-visa backlog, SIJs from these four countries are not immediately eligible to apply for adjustment of status to that of a lawful permanent resident. Until they are eligible to apply for adjustment of status, SIJs lack employment authorization. *See* 8 U.S.C. § 1324a(H)(3) (defining "unauthorized," with respect to the employment of a noncitizen, that the noncitizen is either not a lawful permanent resident or not otherwise authorized to be employed); *see also* 8 C.F.R. § 274a.12 (no employment-authorization category for SIJs).

iii. *USCIS's Deliberations about a New EAD Process for SIJs*

Considering the immigrant-visa backlog for SIJs, USCIS began deliberating about a process that would give SIJs employment authorization until they are eligible to apply for lawful permanent residence. *See* Ex. A. If the proposed process is implemented, all three named Plaintiffs would very likely obtain employment authorization. *Id.* USCIS anticipates that it will make a final decision on the proposed process within 45 days. *Id.*

### III.   LAW & ARGUMENT

**A. The Court should stay the case to conserve judicial resources, as this case will likely become moot before the Court issues a final decision on the merits.**

Courts have the power to control their dockets "with economy of time and effort for itself, for counsel, and for litigants," and therefore may stay proceedings to preserve judicial economy. *Landis v. North Am. Co.,* 299 U.S. 248, 254–55 (1936); *Bank of Am., N.A. v. WRT Realty, L.P.*, 769 F. Supp. 2d 36, 39–40 (D. Mass. 2011). Courts balance the interests of the parties and the Court when determining whether to stay proceedings. *Landis*, 299 U.S. at 254–55. A stay "will most likely be granted" when staying the case would "likely" conserve judicial resources, time, and energy. *Diomed, Inc. v. Total Vein Solutions, LLC,* 498 F. Supp. 2d 385, 387 (D. Mass. 2007).

The Court should stay further proceedings to conserve judicial resources, as Plaintiffs' allegations will very likely become moot before the Court issues a decision on the merits in this case. Plaintiffs challenge USCIS's alleged denials of Plaintiffs' applications for employment authorization and USCIS's alleged failure to provide an employment-authorization mechanism for SIJs. ECF No. 10 ¶¶ 59–68. USCIS, however, is currently deliberating about a process that would provide an employment-authorization mechanism for SIJs. Ex. A. If USCIS decides to implement an EAD process for SIJs, which USCIS anticipates will occur in early 2022, the Court will not be able to redress Plaintiffs' alleged injury—as Plaintiffs will have received the relief they seek—and the case will become moot. Thus, because staying the case until USCIS makes a final decision will likely avoid needless briefing and conserve judicial resources, the Court should grant Defendants' motion.

In addition, staying the case will not harm either party. Indeed, Plaintiffs will be in the same position that they were in when they filed their complaint: individuals with approved SIJ

petitions whose EAD applications remain pending. And even if the Court were to agree with

Plaintiffs that they are eligible for EADs as parolees, there is no legal authority requiring USCIS

to adjudicate their EAD applications within a certain amount of time or to grant their EAD

applications at all. Rather, issuing an EAD to a parolee is entirely discretionary. 8 C.F.R.

§ 274a.12(c); *see also* USCIS, Policy Manual, Vol. 10, Pt. A, Ch. 5,

https://www.uscis.gov/policy-manual/volume-10-part-a-chapter-5#footnote-1. Thus, a favorable

decision by this Court would not necessarily entitle Plaintiffs to immediate employment

authorization.

On the other hand, any decision by this Court regarding Plaintiffs' claim that they merit

EADs based on their alleged status as "parolees" may conflict with USCIS's proposed EAD

process, and could even prevent USCIS from implementing its new process, thereby harming

SIJs nationwide. In addition, a decision by this Court regarding the rights of putative-class

members, who are all residents of Massachusetts, could cause incongruity between the states

about EAD eligibility, should USCIS decide on an EAD process that differs from the one that

Plaintiffs propose. USCIS, as the agency charged with administering the immigration laws,

should have the opportunity to complete its deliberations about an EAD process for Plaintiffs and

other SIJs nationwide before this Court issues a decision that could potentially impede USCIS's

deliberations. Staying proceedings and allowing the agency to craft an EAD mechanism would

not only serve the parties, but also the administration of the SIJ program nationwide.

**B. Alternatively, this Court should stay proceedings until this case is ripe for review.**

Not only would staying this case conserve judicial resources, but it would also prevent

the Court from reviewing claims that are not ripe for judicial review, since USCIS has not yet

adjudicated the three named Plaintiffs' EAD applications. When a case is not yet ripe for judicial

review, a court may dismiss the case without prejudice or stay the case until the issues are ripe.

*See Pardee v. Consumer Portfolio Servs., Inc.*, 344 F. Supp. 2d 823, 834–35 (D.R.I. 2004)

(staying proceedings because the issues were not yet ripe for judicial review). The ripeness

doctrine prevents courts from "entangling themselves in abstract agreement" and also protects

"agencies from judicial interference until an administrative decision has been formalized and its

effects felt in a concrete way by the challenging parties." *Abbott Lab'ys v. Gardner*, 387 U.S.

136, 148–49, (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Courts consider two factors in determining whether a case is ripe: fitness for judicial review and

hardship to the parties. *Id.*

      i.       *The case is not fit for review because Plaintiffs' claims involve uncertain events.*

      The first factor, fitness for judicial review, indicates that the case is not ripe for judicial

review because Plaintiffs' claims rely upon events that may never occur. In determining fitness

for judicial review, "the critical question" is whether "the claim involves uncertain and

contingent events that may not occur as anticipated or may not occur at all." *McInnis-Misenor v.*

*Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003) (quoting *Ernst & Young v. Depositors Econ.*

*Prot. Corp.,* 45 F.3d 530, 536 (1st Cir. 1995)) (internal quotations omitted). In this case,

Plaintiffs challenge USCIS's decision to deny Plaintiffs' EAD applications. ECF No. 10, ¶¶ 59–

63. USCIS, however, has not issued any decision—much less a denial—on Plaintiffs' EAD

applications. Indeed, Plaintiffs' Amended Complaint affirms that Plaintiffs' EAD applications

remain pending. *Id.* ¶¶ 17–19. Even assuming USCIS does deny Plaintiffs' EAD applications at

some point in the future, USCIS may deny them for a number of reasons, not just because of the

employment category. *See* 8 C.F.R. § 274a.12(c) (decision about employment authorization is

discretionary). Because USCIS has not issued a final decision on Plaintiffs' EAD applications,

the Court cannot review USCIS's reasoning for issuing its decision, and therefore the Court has

no basis upon which to determine whether USCIS's decision would be reasonable. Thus, Plaintiffs' APA challenge to USCIS's "denials" is not ready for judicial review.

Plaintiffs' challenge to USCIS's failure to provide an EAD mechanism is likewise not ripe, as USCIS is in the process of deliberating about an EAD process for SIJs. *See* Ex. A. If USCIS ultimately decides not to implement an EAD process for SIJs, then Plaintiffs' claim may become ripe for review. However, because USCIS is still deliberating about an EAD process, this Court should wait until USCIS formalizes a decision that would directly affect Plaintiffs. *Abbott Lab'ys*, 387 U.S. at 148–49.

For similar reasons, this case is not fit for judicial review because Plaintiffs do not challenge a final-agency action. Under the APA, parties may only seek review of a "final agency action." 5 U.S.C. § 704. For agency action to be "final," the action must "mark the consummation of the agency's decision-making process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and internal quotation marks omitted). Here, nothing in Plaintiffs' amended complaint suggests that USCIS has completed its decision-making process; rather, Plaintiffs allege that their EAD applications remain pending, and Plaintiffs allege no specific facts to support a claim that USCIS systematically denies the putative-class members' EAD applications. Because USCIS has not denied Plaintiffs' applications nor issued a final decision regarding its proposed EAD process, no final-agency action exists for this Court to review, and Plaintiffs' claims are not fit for review under the APA.

    ii.      *Plaintiffs will not suffer hardship if the Court stays the case.*

The second consideration in determining ripeness—the hardship prong—considers whether the challenged action creates a "direct and immediate" dilemma. *Stern v. U.S. Dist.*

*Court,* 214 F.3d 4, 10 (1st Cir. 2000) (quoting *Abbott Labs.,* 387 U.S. at 152). This prong determines whether the plaintiff is suffering a present injury from a future event. *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003) (citing *Reg'l Rail Reorganization Act Cases,* 419 U.S. 102, 143 n. 29 (1974)). If the plaintiff still has an opportunity to challenge an agency's decision once it is finalized, then the plaintiff lacks the hardship necessary to continue with judicial review. *See City of Fall River, Mass. v. F.E.R.C.*, 507 F.3d 1, 6–7 (1st Cir. 2007) (holding that the balance of hardship favored the agency, where the appellants "retain[ed] every opportunity to challenge [the agency's] decision" if the agency ultimately approved the challenged action). Plaintiffs retain that opportunity here.

Because Plaintiffs may still challenge USCIS's decision once USCIS issues a final decision on their individual EAD applications and/or once USCIS finalizes its SIJ EAD process, the hardship factor weighs in favor of staying the case until it is ripe for review. Plaintiffs would not be barred by the statute of limitations since the case would be stayed rather than dismissed, not to mention the fact that the statute of limitations has not even begun to run because there is no final-agency action. Moreover, Plaintiffs are not suffering a present injury; as explained in Section III.A., Plaintiffs will remain in the same position that they were in when they filed their Complaint, and USCIS will likely have an EAD mechanism in place before this Court issues a final decision on the merits. Accordingly, this Court should stay the case until it is ripe for judicial review.

## C. CONCLUSION

The Court should stay all proceedings until USCIS completes its deliberations about a proposed SIJ EAD process to conserve judicial resources and to avoid issuing a decision on issues that are not ripe for review. Alternatively, the Court should stay proceedings until USCIS

adjudicates the named Plaintiffs' SIJ applications so that there is a final-agency action for Court

to review.


December 27, 2021                                    Respectfully Submitted,

                                                    BRIAN M. BOYNTON
                                                    Acting Assistant Attorney General
                                                    Civil Division
                                                    United States Department of Justice

                                                    WILLIAM C. PEACHEY
                                                    Director
                                                    Office of Immigration Litigation – District
                                                    Court Section

                                                    WILLIAM C. SILVIS
                                                    Assistant Director

                                                    s/ Katelyn Masetta-Alvarez
                                                    KATELYN MASETTA-ALVAREZ
                                                    Trial Attorney
                                                    United States Department of Justice
                                                    Civil Division
                                                    Office of Immigration Litigation – District
                                                    Court Section
                                                    P.O. Box 868
                                                    Ben Franklin Station
                                                    Washington, D.C. 20044
                                                    (202) 514-0120
                                                    Katelyn.masetta.alvarez@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Katelyn Masetta-Alvarez
KATELYN MASETTA-ALVAREZ

Dated: December 27, 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that, in accordance with Local Rule 7.1(a), Defendants discussed this motion with counsel for Plaintiffs via email various time in November and December of 2021, and by phone on December 21, 2021. Counsel for Plaintiffs stated that they oppose this motion.

/s/ Katelyn Masetta-Alvarez
KATELYN MASETTA-ALVAREZ

Dated: December 27, 2021

12