1  LORBER, GREENFIELD & POLITO, LLP
   Louis W. Horowitz, Esq. [S.B. #020842]
2  3930 E. Ray Road, Suite 260
   Phoenix, AZ 85044
3  TEL: (602) 437-4177
   FAX: (602) 437-4180
4  lhorowitz@lorberlaw.com

5  RENZULLI LAW FIRM LLP
   Christopher Renzulli, Esq. (*Pro Hac Vice*)
6  Peter Malfa, Esq. (PHV forthcoming)
   Jeffrey Malsch, Esq. (*Pro Hac Vice*)
7  One North Broadway, Suite 1005
   White Plains, NY 10601
8  TEL:  (914) 285-0700
   FAX: (914) 285-1213
9  crenzulli@renzullilaw.com
   jmalsch@renzullilaw.com
10
   *Attorneys for Defendants Diamondback Shooting Sports, Inc.,*
11 *Loan Prairie, LLC d/b/a The Hub,, SNG Tactical, LLC and Sprague's Sports, Inc.*

12

13                    **IN THE UNITED STATES DISTRICT COURT**
                         **DISTRICT OF ARIZONA**
14

15 Estados Unidos Mexicanos,                      Case No: 4:22-cv-00472-CKJ

16                              Plaintiff,

17 *vs.*                                          **JOINT MEMORANDUM OF LAW IN**
                                                  **SUPPORT OF DEFENDANTS'**
18                                                **MOTIONS TO DISMISS**

19 Diamondback Shooting Sports, Inc., an
   Arizona corporation; SNG Tactical, LLC,
20 an Arizona limited liability company;
   Loan Prairie, LLC D/B/A The Hub, an
21 Arizona limited liability company; Ammo
   A-Z, LLC, an Arizona limited liability
22 company; Sprague's Sports, Inc., an
   Arizona corporation,
23

24

25                              Defendants.

26

27

28

y:\714 -
municipal
cases\714.033
mexico dealers
joint defense

*(vertical text, left margin)* LORBER, GREENFIELD & POLITO, LLP
13985 Stowe Drive, Poway, California 92064
Telephone (858) 513-1020 / Facsimile (858) 513-1002

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. III

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 3

STANDARD OF REVIEW ................................................................................... 5

ARGUMENT ......................................................................................................... 5

I.      The Mexican Government Lacks Article III Standing ................................ 5

     A.   The Harms Alleged are Not "Fairly Traceable" to Defendants' Actions ... 6

     B.   The Claimed Injuries Cannot be Redressed by a Favorable Decision ........ 8

II.     Protection of Lawful Commerce in Arms Act Bars Mexico's Claims .......................... 9

     A.   Congress Enacted the PLCAA To Bar Exactly This Type of Lawsuit ...... 10

     B.   This Suit Is a "Qualified Civil Liability Action" Under the PLCAA ........ 11

     C.   No PLCAA Exception Applies to Any of Mexico's Claims ................ 12

          1.   The "Negligence Per Se" Exception Does Not Apply ............. 12

          2.   The Negligent Entrustment Exception Does Not Apply ........ 13

          3.   The Predicate Exception Does Not Apply ................................ 16

               *a.   The predicate exception recognizes only firearms-specific statutes.* .......................................................................... 17

               *b.   Mexico has not plausibly alleged a violation of any firearms-specific statute.* ................................. 19

               *c.   The predicate exception does not allow claims based on generally applicable consumer-protection statutes.* ....... 20

               *d.   Mexico cannot satisfy PLCAA's proximate-cause requirement.* ......................................................... 21

III.    The Complaint Should Be Dismissed for Lack of Proximate Causation ................... 22

IV.     Plaintiff is an Improper Party to Bring a Claim Under the Arizona CFA ............. 25

V.      Mexico's RICO Claims Must be Dismissed ........................................... 27

     A.   Mexico Lacks Standing to Assert Civil RICO Claims ................ 28

          1.   Mexico Fails to Allege Actionable Financial Loss ................ 28

          2.   Mexico Fails to Allege Proximate Causation ...................... 30

     B.   The Complaint Fails to Allege a Pattern of Racketeering Activity ....... 31

          1.   18 U.S.C. §§ 932, 933 Do Not Apply Retroactively ............ 32

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

2.      The Complaint's Mail Fraud and/or Wire Fraud Allegations
        Are Insufficiently Plead and Fail to Establish an Actionable
        Pattern of Racketeering Activity .............................................. 33

3.      The Complaint's Money Laundering Allegations Are
        Insufficiently Plead and Fail to Establish an Actionable
        Pattern of Racketeering Activity .............................................. 35

C.   The Complaint Fails to Plausibly Allege a RICO Enterprise ................... 37

D.   Mexico's Complaint is an Impermissible "Shotgun Pleading" ................ 38

E.   The Civil RICO Statute Does Not Permit Recovery for Foreign Injuries . 39

F.   Mexico's Claims of Equitable Relief is Not Actionable Under RICO ....... 41

VI.   THERE ARE INDIVIDUAL BASES TO DISMISS PLAINTIFF'S COMMON LAW
      CLAIMS ....................................................................................................... 41

A.   Plaintiff Fails to State a Claim for Unjust Enrichment. ............................ 41

B.   The Complaint Fails to State a Claim for Public Nuisance. ..................... 42

C.   Plaintiff Fails to State a Claim for Negligence and Gross Negligence. ...... 43

CONCLUSION ................................................................................................................ 45

LOCAL RULE 12.1(C) CERTIFICATION ................................................................... 45

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

# **TABLE OF AUTHORITIES**

## **Cases**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) ...................................................... 22

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) .............................................. 36

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. In Ariz.*, 148 Ariz. 1, 5 (1985) ............... 51

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .......................................................... 6, 16, 24

*Ayzoukian v. Wash. Mut. Bank*, No. CV 09-01103, 2009 WL 1808390, at *3 (C.D. Cal. June 24, 2009) ...... 43

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ...................................................... 16

*Bloxham v. Glock, Inc.*, 203 Ariz. 271, 274 (Ariz. Ct. App. 2002) ..................................... 52

*Blue Shield of Va. v. McCready*, 457 U.S. 465, 477 n. 13 (1982) ........................................ 27

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 n.17 (1996) ........................................... 54

*Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 207 (1988) ....................................... 39

*Bowyer v. Ducey*, 506 F. Supp. 3d 699, 708 (D. Ariz. 2020) .............................................. 7

*Bredberg v. Middaugh*, No. 21-35156, 2022 WL 2662878, at *1 (9th Cir. July 11, 2022) .............. 44, 45

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245 (D.N.J. 2000) . 3, 9

*Canyon Cnty. v. Sygenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir. 2008) ........................... 35, 36

*Cecala v. Newman*, 532 F.Supp.2d 1118, 1138 (D. Ariz. 2007) ......................................... 28

*Christy v. Baker*, 7 Ariz. App. 354 (App. 1968) ...................................................... 18

*City of Almaty v. Khrapunov*, 956 F.3d 1129, 1132 (9th Cir. 2020) ................................... 36

*City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004)............................ 3, 29

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008) ................ 2, 11, 22

*City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002) ..................... 3, 28

*Cleveland v. United States*, 531 U.S. 12, 15 (2000) .................................................. 41

*Club One Casino, Inc. v. Perry*, 837 F. App'x 459, 460-61 (9th Cir. 2020) .......................... 36

*Comm'r v. Clark*, 489 U.S. 726, 739 (1989)........................................................... 22

*Deal v. United States*, 508 U.S. 129, 132 (1993) .................................................... 21

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005).................................................... 34, 35

*Duncan v. Walker*, 533 U.S. 167, 174 (2001) ......................................................... 23

*Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000) .................. 8

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) .............................. 40

*Est. of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 388-89 (Alaska 2013)...................... 2, 11

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., et al.*, - F.Supp.3d -, 2022 WL 4597526 (D. Mass. Sept. 30, 2022)........................................................ 6, 9, 14, 48

*Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996) ........................................ 28

*Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011) ........................................ 53

*Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 266 (Ariz. Ct. App. 1989)......................... 29

*Fields v. Twitter, Inc.*, 881 F.3d 739, 744 (9th Cir. 2018) ........................................ 27

*Flowers v. K-Mart Corp.*, 126 Ariz. 495, 498 (Ariz. Ct. App. 1980) ................................. 28

*Fraser v. Team Health Holdings, Inc.*, No. 20-cv-04600-JSW, 2022 WL 971579, at *12 (N.D. Cal. Mar. 31, 2022) ...................................................................... 45

*Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001) ...................................... 2, 9, 30

*Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) ....................................................... 7

*Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019) .............................. 27

*Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) ......................................... 27

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) .......................................... 43

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)................................. 27, 34, 36, 37

*Hopi Tribe v. Ariz. Snowbowl Resort Ltd. P'ship*, 245 Ariz. 397, 399-400 (2018).................................51

*Ileto v. Glock, Inc.*, 565 F.3d 1126, 1137 (9th Cir. 2009)........................................2, 11, 21, 25

*In re Acad., Ltd.*, 625 S.W.3d 19, 32-36 (Tex. 2021)..............................................11, 18, 19

*In re Ariz. Theranos, Inc. Litig.*, 308 F. Supp. 3d 1026, 157 (D. Ariz. 2018) ....................................50

*In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918-19 (C.D. Cal. 2011) ......................................43

*Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013).......................................2, 11

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ...........................................40

*Kelly v. United States*, 140 S. Ct. 1565, 1572-74 (2020)...........................................41

*Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018)........................................29

*Kuehn v. Stanley*, 208 Ariz. 124, 129 (Ariz. Ct. App. 2004) ...........................................31

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999) ..... 29

*Landgraf v. Usi Film Prods.*, 511 U.S. 244, 280 (1994) ...........................................38, 39

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 571 (2001)...........................................33

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) ...........................................6, 7, 10

*Lumbermens Mut. Cas. Co. v. Kosies*, 124 Ariz. 136, 138 (Ariz. Ct. App.1979)..............................17

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) .......................42

*Marshall v. Goguen*, No. Cv 21-19-M-DWM, 2022 WL 1641776, at *17 (D. Mon. May 24, 2022)......45

*Martin v. Schroeder*, 209 Ariz. 531 (Ariz Ct. App. 2005).......................................18, 52

*Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1041 (C.D. Cal. 2011) .............................46

*Morgan v. Chao*, No. CV-16-04036-PHX-DLR, 2017 WL 3215647, at **1-2 (D. Ariz. July 28, 2017)26, 27

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 204-05 (2d Cir. 2013).........42

*Navajo Nation v. U.S. Dept. of the Interior*, No. CV-19-08340-PCT-JJT, 2020 WL 6869449, at *4 (D. Ariz. Nov. 23, 2020) ...........................................8, 10

*Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 178 (2007)...........................................27

*Odom v. Microsoft Corp.*, 486 F.3d 541, 549 (9th Cir. 2007) ...........................................44

*Ontiveros v. Borak*, 136 Ariz. 500, 505-06 (1983) ...........................................29, 52

*Oscar v. Univ. Students Coop. Ass'n.*, 965 F.2d 783, 785 (9th Cir. 1992) ...................................34

*Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 904-05 (10th Cir. 2005).................................15

*People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192 (N.Y. App. Div. 2003) .....................3

*Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216 (D. Colo. 2015).......................................2, 11

*Prescott v. County of El Dorado*, 298 F.3d 844, 850 (9th Cir. 2002)........................................7

*Quiroz v. ALCOA, Inc.*, 243 Ariz. 560, 563-64 (2018)...........................................51, 52

*Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986) .......................................49

*Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012) ...........................................11

*Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. Dist. Ct. App. 2002) ...........................................3

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016)...........................................48

*Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990)........................................29

*Salmon River Concerned Citizens v. Robertson*, 432 F.3d 134, 139 (9th Cir. 1994) ...........................8

*Scott v. Boos*, 215 F.3d 940, 943 (9th Cir. 2000)...........................................39

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ...........................................34

*SEIU Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1074 (D.C. Cir. 2001) .................3

*Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573 (1974) ......................................32

*Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)...........................................1, 7, 8, 9

*Smagin v. Yegiazaryan*, 37 F.4th 562, 566 (9th Cir. 2022).......................................34

*Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 325 (Conn. 2019)....................................25

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

iv

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ............................................................ 7
*State Farm Fire & Cas. Co. v. Amazon.com Inc.*, No. CV-17-01994-PHX-JAT, 2018 WL 1536390, at *4 (D. Ariz. Mar. 29, 2018) ........................................................................................ 30, 31
*State of São Paulo of Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116, 1126 (Del. 2007) ............................................................................................................................... 3, 53
*Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011) ................................................................. 27
*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)................................. 7
*Stepper v. England*, 14 F. App'x. 859, 860 (9th Cir. 2001) ..................................................... 27
*Tellez v. Saban*, 188 Ariz. 165 (Ariz Ct. App 1996)................................................................ 18
*Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 377 (2002) .................................................. 33
*Tissicino v. Peterson*, 211 Ariz. 416, 419 (Ariz. Ct. App. 2005)....................................... 17, 18
*Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*, 187 A.3d 1174, 1181 (Conn. App. Ct. 2018) .................................................................................................................................. 16
*Travieso v. Glock, Inc.*, 526 F. Supp. 3d 533, 542 (D. Ariz. 2021) ........................................ 12
*Trustmark Ins. Co. v. Bank One, Ariz., N.A.*, 202 Ariz. 535, 539 (Ariz. Ct. App. 2002) .......... 50
*U.S. v. Hutchings*, No. 19-cr-361-BAH (D.D.C. Sept. 8, 2022)............................................... 40
*United States v. Hayes*, 555 U.S. 415, 427 (2009) ................................................................. 22
*United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010)......................................... 53
*United States v. Turkette*, 452 U.S. 576, 583 (1981) .............................................................. 45
*United States v. Williams*, 553 U.S. 285, 294 (2008) ............................................................. 23
*USLife Title Co. of Ariz. V. Gutkin*, 152 Ariz. 349, 353 (Ariz. Ct. App. 1986)......................... 50
*Verduzco v. American Valet*, 240 Ariz. 221, 224 (Ariz. Ct. App. 2016) ................................. 17
*Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 748 (D. Haw. 2022) ............................... 10
*Warth v. Seldin*, 422 U.S. 490, 498 (1975)............................................................................. 7
*Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19 (Ariz. 2016) .................................................... 31
*Yakubowicz v. Paramount Pictures Corp.*, 536 N.E.2d 1067, 1070 (Mass. 1989)................... 54

**Statutes**

15 U.S.C. § 7901 ....................................................................... 13, 16, 22, 23, 26, 27, 33
15 U.S.C. § 7902 ............................................................................................................ passim
15 U.S.C. § 7903 ............................................................................................................ passim
18 U.S.C. § 1956 ................................................................................................................. 51
18 U.S.C. § 1961 ................................................................................................................. 50
18 U.S.C. § 1964 ................................................................................................................. 41
18 U.S.C. § 921 ............................................................................................................. 16, 17
18 U.S.C. § 1341 ................................................................................................................. 49
18 U.S.C. § 1343 ................................................................................................................. 49

**Other Authorities**

A.R.S. § 12-714 .................................................................................................................. 61
A.R.S. § 44-1521 .......................................................................................................... 30, 37
A.R.S. § 12-541 .................................................................................................................. 40
BLACK'S LAW DICTIONARY (11th ed. 2019) .................................................................... 25, 30
Fed. R. Civ. P. 9(b) .............................................................................................................. 49
H.R. Rep. No. 109-124, at 12 (2005)............................................................................... 15, 33
RESTATEMENT (THIRD) OF TORTS § 14 (2010)........................................................................ 18
Timothy D. Lytton, *Tort Claims Against Gun Manufacturers for Crime-Related Injuries*, 65 Mo. L. Rev. 1, 6-50 (2000).............................................................................................................. 15, 26
U.S. Const. Art. III, § 2, cl. 1 ................................................................................................. 9

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 200, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

v

Vivian S. Chu, Cong. Rsch. Serv., R42871, *The Protection of Lawful Commerce in Arms Act: An Overview of Limiting Tort Liability of Gun Manufacturers* 1 (2012)....................................... 15

W. Prosser, *Handbook on the Law of Torts* § 42, at 324–27 (4th ed. 1971)................................ 62

Lorber, Greenfield & Polito, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

1

2

**INTRODUCTION**

3      On August 4, 2021, Mexico filed a lawsuit in the United States District Court for the

4  District of Massachusetts against several firearm manufacturers and a firearm distributor,

5  claiming they were legally responsible for violence inflicted by drug cartels in Mexico. On

6  September 30, 2022, Chief Judge Saylor dismissed Mexico's case outright, finding the

7  Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901, et seq., precluded

8  all of its causes of action.

9      Ten days later, Mexico filed the instant lawsuit against five local Arizona firearms

10  dealers claiming that *these* dealers are legally responsible for violence inflicted by drug cartels

11  in Mexico.  The Complaint, however, does not allege that any of the moving defendants, who

12  are law-abiding members of the business community in the State of Arizona and licensed by the

13  federal government to regularly transact business involving the sale of firearms, sell their

14  firearms to the cartels. Instead, Mexico's theory is that through a series of unspecified events,

15  third-party criminals acquire, sell, and smuggle the firearms originally sold by defendants into

16  Mexico, where they are eventually illegally used by drug cartels to commit crimes.  It is these

17  intervening and superseding acts that give rise to various alleged financial harms suffered by the

18  Mexican government.  For multiple reasons, the law cannot be stretched to impose liability upon

19  these defendants premised on the bare allegations of fact in the Complaint.

20      *First*, the Mexican government does not have Article III standing to bring this case. It is a

21  cardinal rule that an injury is not fairly traceable to the defendant when it "results from the

22  independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org*.,

23  426 U.S. 26, 41-42 (1976). The Complaint admits that all of defendants' acts occurred within

24  Arizona, and Plaintiff's injuries stem from violence committed by criminals solely in Mexico.

25  Against this factual backdrop, Mexico fails to allege that any of its injuries are fairly traceable to

26  any named defendant. In addition, the remedies sought cannot redress the injuries alleged. For

27  these reasons, Mexico lacks standing and the case must be dismissed.

28

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

*Second*, federal law bars its claims at the threshold.  Under the PLCAA, federally licensed sellers have broad immunity against lawsuits claiming harms "resulting from the criminal or unlawful misuse of a [firearm]" by a "third party." 15 U.S.C. § 7903(5)(A).  With only a few narrow exceptions, no such lawsuit may be "brought" in "any Federal or State court." *Id*. § 7902(a).  Although Mexico tries to shoehorn some of its claims into these exceptions, it does not succeed. Mexico is not the first person or governmental entity to blame the firearms industry for the criminal misuse of its products, and numerous cases brought by domestic plaintiffs have been roundly rejected under the PLCAA.[1]  Mexico's case fares no better.

*Third*, Mexico's Complaint fails because it relies on claims that have already been routinely rejected by courts throughout the country. Even before the PLCAA was enacted, many state and local governments within the United States sued the firearms industry based on allegations that mirror the ones here. And time after time, federal and state courts held that firearms companies cannot be liable for the remote harms caused by third-party acts of criminal violence. *See, e.g.*, *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001).[2]  There is no reason that a foreign governmental plaintiff should be able to succeed where those domestic governments failed.

*Fourth*, the firearm industry owes no common-law duty to Mexico. Even where entities *directly sell* harmful products to foreign citizens, courts routinely reject claims that they have any legal duty to protect foreign sovereigns from derivative harms.[3] The absence of duty is especially clear here, where Mexico does not claim the defendants make private sales in Mexico.

---

1 *See, e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1137 (9th Cir. 2009); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008); *Est. of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 388-89 (Alaska 2013); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216 (D. Colo. 2015); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013).

2 *See also City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245 (D.N.J. 2000); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004); *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192 (N.Y. App. Div. 2003).

3 *SEIU Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1074 (D.C. Cir. 2001); *State of São Paulo of Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116, 1126

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

*Fifth*, Mexico fails to state a claim under Arizona's Consumer Fraud Act ("CFA") for multiple reasons. Mexico is not a "consumer" as contemplated by the statute; and since Plaintiff does not allege that it "heard" any "misrepresentations" made by any defendant, there can be no private cause of action under the CFA.

*Finally*, Mexico cannot invoke the Racketeer Influenced and Corrupt Organization Act ("RICO") to save its case against the defendants as Mexico lacks standing to assert a civil RICO claim. Moreover, the Complaint fails to sufficiently allege a pattern of racketeering activity, it fails to plausibly allege a RICO enterprise, and its claims to redress foreign injuries and for equitable relief are not actionable under RICO. Finally, Mexico's Complaint is an impermissible "shotgun pleading" which requires dismissal.

Just like in the prior case brought by Mexico against the firearms manufacturers, this case implicates a clash of national values. In this case, Mexico seeks to reach *outside* its borders and punish federally licensed firearms dealers in the United States, none of whom have been accused, charged or convicted of illegally selling any firearms, due to a disagreement of values concerning access to firearms by citizens. This Court should not allow Mexico to use the federal judiciary as a tool for circumventing the U.S. domestic legislative process. It should dismiss the Complaint.

## BACKGROUND

Unable to control cartel violence within its own borders, Mexico first filed a lawsuit seeking to place the blame on seven firearms manufacturers that are incorporated and headquartered in the United States. The theory of this Complaint is that the retailer defendants are liable for "massive injuries to the Government and its citizens." Compl. ¶ 236. These injuries include "substantial and unusual costs of providing … extraordinary health care, law enforcement and military [] services, criminal justice administration, public assistance, and other social services and public programs." *Id.* ¶ 247. Although the Complaint lacks detail on the exact chain of events, the broad outline is clear. Defendants sell or transfer lawful firearms to

---

(Del. 2007); *Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. Dist. Ct. App. 2002).

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

U.S. citizens within the state of Arizona. A small percentage of these customers are alleged to have illegally transferred firearms to other persons in Arizona or attempted to illegally smuggle them into Mexico.  Some of those firearms allegedly wound up in the hands of criminals in Mexico. *Id*. ¶¶ 24-116, 119-125.

However, while the Complaint alleges that there are more than 1,500 "gun dealerships" in Arizona, with 640 total dealers in Phoenix, 181 total dealers in Tucson, and 25 total dealers in Yuma, Mexico has singled out one dealer from Yuma, one dealer from Phoenix and three dealers from Tucson to make a political statement. *Compl.* ¶¶ 31-33. Mexico identifies approximately 132 firearms that were involved in alleged straw purchases from these five defendants over a five-year period (2018-2022), an average of five firearms per defendant per year. *Id.* ¶ 55. Then, using "estimates" of the number of "guns trafficked from the U.S. to Mexico" compared to the "number of guns traced from the U.S. to Mexico," Mexico provides a "range" of the number of "guns that each Defendant participates in trafficking into Mexico." *Id.* ¶ 120.  As such, only a small percentage of the firearms sold by the defendants are alleged to have been trafficked to Mexico, and none are identified in the Complaint as being associated with a specific violent crime, or injury to a Mexican citizen.

Once in possession of the contraband firearms, wherever they may come from, the cartels use them against Mexican residents. *Compl*. ¶ 236. As a result, the Complaint alleges that Mexico has expended "resources" to address "the epidemic of violence" in the country. *Id*. ¶ 247. In particular, Mexico has incurred "costs for providing, for example, extraordinary health care, law enforcement and military and services, criminal justice administration, public assistance, and other social services and public programs." *Id*. Beyond bearing various "costs" resulting from gun violence, Mexico also alleges various economic "[l]osses" such as "diminished property values in the communities affected by" gun violence, and "decreased efficiency and size of the working population in Mexico." *Id*. ¶ 248.

Based on these diffuse harms, Mexico brings an assortment of claims. The Complaint asserts common law claims of simple negligence (Count One), public nuisance (Count Two), negligent entrustment (Count Three), negligence per se (Count Four), gross negligence (Count

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

Five), unjust enrichment and restitution (Count Six), and punitive damages (Count Eight). *Compl.* ¶¶ 261-302, 310-313. All of these claims allegedly arise out of defendants' sales of firearms to purported traffickers even though no defendant was charged, prosecuted or convicted of illegally selling any firearms, let alone the firearms identified in the Complaint.

On its face, the Complaint's causes of action for negligence, public nuisance, gross negligence, unjust enrichment and restitution, and punitive damages must be dismissed because this case falls squarely into the definition of a prohibited qualified civil liability action, and the PLCAA provides no exceptions for these specific claims. The PLCAA immediately filters out non-excepted claims. *See Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., et al.*, __ F.Supp.3d __, 2022 WL 4597526, at *18 (D. Mass. Sept. 30, 2022) ("Those claims are accordingly barred by the PLCAA, and will be dismissed."). Mexico, however, attempts to satisfy two of the exceptions to the PLCAA – (1) the exception for an action against a seller for negligent entrustment or negligence per se, and (2) the exception for an action in which a seller knowingly violated a federal or state statute applicable to the sale or marketing of firearms (commonly referred to as the "predicate exception"), 15 U.S.C. §§ 7903(5)(B)(ii), (iii). However, the Complaint fails to satisfy the requirements for either exception.

## STANDARD OF REVIEW

On a motion to dismiss, the court must accept the alleged facts as true, but need not accept "conclusory statements" unsupported by any concrete factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To "unlock the doors of discovery," the allegations must show that the defendants' liability is actually "plausible," not merely "conceivable." *Id.* at 678-80. If the facts alleged are "merely consistent with" liability, then the case must be dismissed. *Id.* at 678.

## ARGUMENT

## I.   The Mexican Government Lacks Article III Standing

Article III provides that federal courts may only exercise judicial power in the context of "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1; *Lujan v. Defs. of Wildlife*, 504 U.S.

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

555, 560-61 (1992). For there to be a case or controversy, the plaintiff must have standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Whether a plaintiff has standing presents a 'threshold question in every federal case [because it determines] the power of the court to entertain the suit.'" *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 708 (D. Ariz. 2020) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). If there is no Article III standing, then the case must be dismissed for lack of subject matter jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998).

The plaintiff has the threshold burden to establish standing to ensure that courts "do not engage in policymaking properly left to elected representatives." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018). To establish standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547; *Lujan*, 504 U.S. at 560-61. In this case, Mexico cannot establish Article III standing.

### A.       The Harms Alleged are Not "Fairly Traceable" to Defendants' Actions

An injury is not "fairly traceable" to the named defendant when it "results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976); *Prescott v. County of El Dorado*, 298 F.3d 844, 850 (9th Cir. 2002). Indeed, Article III standing will not be found when "[s]peculative inferences are necessary to connect [the plaintiff's] injury to the challenged actions of the petitioners." *Simon*, 426 U.S. at 45; *see also Salmon River Concerned Citizens v. Robertson*, 432 F.3d 134, 139 (9th Cir. 1994). Accordingly, when a plaintiff's asserted "causal connection" relies on an "attenuated chain of conjecture," there is insufficient basis for standing. *Eco. Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000); *see also Navajo Nation v. U.S. Dept. of the Interior*, No. CV-19-08340-PCT-JJT, 2020 WL 6869449, at *4 (D. Ariz. Nov. 23, 2020) (no standing because the plaintiff's alleged injury was the result of the independent action of some third party not before the court).

6

Mexico lacks standing because any alleged harm it sustained was caused by the independent actions of third parties who criminally misused firearms in Mexico. As the Complaint makes certain, the criminals who obtain firearms in Mexico do so through a prolonged and attenuated chain of events, which include countless other independent non-parties who illegally procure, sell, and smuggle firearms into Mexico. Such a scenario– where the alleged harm is so remote from the original sales by the retailers –fits squarely within the rationale and holding from *Simon* and its progeny. The alleged injury in this case is not "fairly traceable" because the alleged harm to Mexico "results from the independent action of some third party not before the Court." *Simon*, 426 U.S. at 42.

Mexico alleges that the defendants sell firearms in the United States, then the firearms are resold or procured by other third parties; illegally smuggled across the Mexican border by other third parties; and then "drug cartels" illegally purchase the smuggled firearms and use them to commit violent crimes in Mexico. Compl. ¶¶ 1, 119, 137. Mexico then alleges that it is harmed because it is required to incur costs for "extraordinary health care," "criminal justice administration," "public assistance," and "other social services and public programs." *Id.* ¶ 247. These alleged harms are far too remote and attenuated to establish Article III standing.

Moreover, the criminal acts of drug cartels in Mexico are independent from any alleged conduct by the defendants. The Mexican government has not – and cannot – allege that the drug cartels in Mexico would not engage in the same violence regardless of the alleged conduct of the defendants. Thus, it is "speculative at best" that the criminal acts of the drug cartels would not "have occurred . . . in the absence of defendants' alleged violations." *Simon*, 426 U.S. at 42-43. Finally, governmental entities lack standing to bring lawsuits against firearm companies for remote and indirect harm caused by the criminal misuse of firearms. *See, e.g., Camden County Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245 (D. N.J. 2000) (finding a lack of constitutional standing because the criminal misuse of firearms was "several steps removed" from any conduct of the defendants); *Ganim v. Smith & Wesson*, 780 A.2d 98, 100 (Conn. 2001) (holding that the alleged harm caused by third-party criminals were too "indirect, remote, and derivative" to establish standing).

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

**B.     The Claimed Injuries Cannot be Redressed by a Favorable Decision**

Even if this Court were to find that the Complaint "plausibly alleges that Mexico's injuries are 'fairly traceable' to defendants' conduct for purposes of Article III standing," Mexico still lacks standing because a favorable decision in this matter cannot redress the claimed injuries to any measurable degree. *See Estados Unidos Mexicanos* at *9.

The three elements required to establish the "irreducible constitutional minimum of standing" includes a requirement that, "it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (internal citations omitted). Here, even if Mexico was successful in prosecuting all of its claims against these defendants, it would have no perceivable effect on reducing cartel gun violence in Mexico.

In *Lujan*, the Supreme Court held that a "further impediment to redressability is the fact that the agencies generally supply only a fraction of the funding for a foreign project. AID, for example, has provided less than 10% of the funding for the Mahaweli project. Respondents have produced nothing to indicate that the projects they have named will either be suspended, or do less harm to listed species, if that fraction is eliminated." *Id.* at 571.  Here, the Complaint alleges that out of 26,860 firearms recovered in Mexico at crime scenes between 2014-2018, only 4,444 were connected to Arizona (either manufactured, distributed or sold in Arizona). Compl. ¶ 28. Thus, even if all Arizona firearm dealers ceased doing business, 22,500 illegal firearms would still be available to cartels. Further, Arizona is "home to almost 1,500 gun dealerships." *Id.* ¶ 31. As such, these five defendants represent only .33% of the dealers in Arizona. Thus, assuming Mexico's goal is to put the defendants out of business, such a result, at best, would simply reduce the number of firearms going to Mexico from Arizona by a total of 15 firearms over a four-year span.  That is less than one firearm, per defendant, per year.

Finally, Mexico claims that it has been damaged in the amount of $238 billion (US) due to violence. Compl. ¶ 253. Thus, no potential financial renumeration obtained from these five, privately held, family owned defendants could in any way "redress" such an economic impact. "Plaintiffs need not show that redressability is guaranteed; rather, they must show there will be a 'change in a legal status' that will 'amount to a significant increase in the likelihood that [they]

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

would obtain relief that directly redresses the injur[ies] suffered.'" *Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 748 (D. Haw. 2022) (citing *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012)). Any recoverable award against these five defendants could not even be considered "nominal" compared to the claimed monetary harm.

## II.   Protection of Lawful Commerce in Arms Act Bars Mexico's Claims

This suit is also barred at the threshold by federal statute. In 2005, Congress enacted the PLCAA to prohibit precisely the type of claims asserted in this case. The PLCAA generally bars any "qualified civil liability action" from being "brought" in "any Federal or State court," including any claim against a "seller of a [firearm]" based on harms "resulting from the criminal or unlawful misuse of a [firearm] by . . . a third party." 15 U.S.C. §§ 7902(a), 7903(5)(A). The Ninth Circuit recognized that the PLCAA provides threshold immunity from suit (as opposed to being merely a defense to ultimate liability). *See, e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims").[4]

In 2021, this Court was asked to analyze the scope of immunity afforded by the PLCAA when faced with an argument that it was "not intended to preempt established theories of common law liability." *Travieso v. Glock, Inc.*, 526 F. Supp. 3d 533, 542 (D. Ariz. 2021). In fact, plaintiff's counsel in *Travieso* argued that the "PLCAA's preemptive scope is correctly construed as reaching only novel claims."[5] *Id*. The *Travieso* court held:

---

[4] *See also, e.g.*, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 398 (2d Cir. 2008) (PLCAA bars "the commencement or the prosecution of qualified civil liability actions."); *In re Acad., Ltd.*, 625 S.W.3d 19, 32-36 (Tex. 2021) (directing judgment for defendant based on PLCAA immunity from suit, finding that trial "'would defeat the substantive right' granted by the PLCAA."); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216 (D. Colo. 2015) (dismissing claim that seller violated ban on ammunition sales based on PLCAA immunity); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013) (PLCAA reflects congressional intent to "weed out, expeditiously, claims the PLCAA bars."); *Est. of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 388-89 (Alaska 2013) (PLCAA bars any qualified civil liability action not falling within a statutory exception).

[5] Plaintiff's co-counsel in *Travieso* is co-counsel to Mexico in this action and was co-counsel to Mexico in the Massachusetts litigation.

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177  Facsimile (602) 437-4180

The PLCAA's plain text extends preemption to Plaintiff's tort and products liability claims. Its unambiguous terms bar *any* civil cause of action, regardless of the underlying theory, when a plaintiff's injury results from "the criminal or unlawful misuse" [by] the person or a third party, unless a specific exception applies. Further, the provisions of the law indicate Congress intended to generally preempt common law torts.

*Id.* (internal citations omitted).

### A.     Congress Enacted the PLCAA To Bar Exactly This Type of Lawsuit

"The PLCAA was considered and passed at a time when victims of shooting incidents," along with various government entities, "brought civil suits seeking damages and injunctive relief against out-of-state manufacturers and sellers of firearms." Vivian S. Chu, CONG. RSCH. SERV., R42871, *The Protection of Lawful Commerce in Arms Act: An Overview of Limiting Tort Liability of Gun Manufacturers* 1 (2012). To bring these claims, plaintiffs invoked novel interpretations of generally applicable theories of liability, including "negligent marketing," "public nuisance," and "deceptive trade practices." Timothy D. Lytton, *Tort Claims Against Gun Manufacturers for Crime-Related Injuries*, 65 Mo. L. Rev. 1, 6-50 (2000).

In light of this trend, Congress recognized that the firearms industry was "in danger of being overwhelmed by the cost of defending itself against these suits." H.R. Rep. No. 109-124, at 12 (2005). Consequently, Congress enacted the PLCAA to immunize federally licensed firearms manufacturers and sellers from actions seeking "money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals." 15 U.S.C. § 7901(a)(3). Congress expressly noted that the sale of firearms is already "heavily regulated by Federal, State, and local laws," including "the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act." *Id.* § 7901(a)(4). In light of this existing oversight and control, Congress declared that "[b]usinesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms . . . are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products . . . that function as designed and intended." *Id.* § 7901(a)(5).

**B.      This Suit Is a "Qualified Civil Liability Action" Under the PLCAA**

The PLCAA generally bars any "qualified civil liability action" from being "brought" in "any Federal or State court." 15 U.S.C. § 7902(a). Such actions include claims "brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . resulting from the criminal or unlawful misuse of a qualified product by the person or a third party. . . ." *Id.* § 7903(5)(A). All "firearm[s]" are "qualified product[s]." *Id.* § 7903(4). Likewise, covered "person[s]" include "any governmental entity." *Id.* § 7903(3). Under the statute, protected "seller[s]" include companies "engaged in the business of selling firearms at wholesale or retail" that are "licensed" as firearms "dealer[s]" under federal law. *Id.* § 7903(6)(B) (incorporating definition of firearms "dealer[s]" set forth in 18 U.S.C. § 921(a)(11)).

This case is a "qualified civil action" presumptively barred by the PLCAA. First, Plaintiff is a covered "person" because it falls within the defined category of "*any* governmental entity." *Id.* § 7903(3) (emphasis added). Second, the Complaint alleges that defendants are "gun dealers" and "Federally licensed firearms dealers" that "chose to apply for and obtain a U.S. federal license to engage in the gun business." Compl. ¶¶ 31-35,126-127, 130. Third, all of Mexico's alleged injuries flow from illegal "trafficking" of firearms across the border to "drug cartels in Mexico" and the lawsuit was brought to "try to prevent and to mitigate the effects of the gun-violence epidemic … in Mexico." *Id.* ¶¶ 1, 6. Thus, all of the "damages" sought in this case "result[] from" the "criminal or unlawful misuse of" firearms by "third part[ies]." 15 U.S.C. § 7903(5)(A).  As such, all causes of action not specifically enumerated as exceptions in the PLCAA "must be dismissed." *See Estados Unidos Mexicanos*, 2022 WL 4597526, at **10, 16 (dismissing Mexico's claims for negligence, public nuisance, defective design, negligence per se, gross negligence, unjust enrichment and restitution, and punitive damages). This Court should take the same approach and find that Mexico's Negligence (Counts 1), Public Nuisance (Count 2), Gross Negligence (Count 5), Unjust Enrichment and Restitution (Count 6) and Punitive Damages (Count 8) clearly do not fall within an exception to the PLCAA, and thereby must be dismissed.

### C.  No PLCAA Exception Applies to Any of Mexico's Claims

The broad immunity conferred by the PLCAA is subject to narrowly defined exceptions in 15 U.S.C. § 7903(5). Mexico unsuccessfully attempts to avail itself of three of these exceptions. The only way it can do so is by construing the exceptions so broadly—and so contrary to their plain meaning—that they would swallow the immunity Congress enacted the PLCAA to provide.

### 1.  The "Negligence Per Se" Exception Does Not Apply

Mexico cannot satisfy the PLCAA exception for "negligence per se." 15 U.S.C. § 7903(5)(A)(ii). Negligence per se applies only where a seller "violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect." RESTATEMENT (THIRD) OF TORTS § 14 (2010). Here, this claim fails because, as noted above, the Complaint fails to allege facts plausibly showing that defendants actually violated any particular statute. In fact, Plaintiff fails to articulate or cite any law in effect at the time of the alleged firearm sales that the defendants violated. Within this Count, it is vaguely alleged that "[E]ach defendant violated statutory duties" and "the statutory violations are a proximate cause of the injuries to the Government." Compl. ¶ 285. These are not only insufficient under the federal pleading standard, but Plaintiff admits that before June 25, 2022, there was no separate criminal offense for engaging in a straw "sale." *Id.* at ¶ 143. There are no alleged improper firearms sales by these defendants that post-date the enactment of this new "straw purchasing" law. *Id.* at ¶¶ 55-117. Even Mexico cannot claim that any defendant has been cited, charged, or convicted of violating any statute, law or ordinance with respect to the sale or transfer of firearms.

Moreover, Mexico does not fall within the "class of persons" that any of the cited statutes were designed to protect. Congress did not enact these federal firearms laws to protect foreign sovereigns, and thus Mexico does not fall within any discrete protected class of individuals. *See Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 904-05 (10th Cir. 2005) (asking whether "the

12

policy behind the legislative enactment will be appropriately served by using the policy to impose and measure civil damage liability"). Governments do not fall within the "class of persons" that safety statutes protect. *See, e.g.*, *Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*, 187 A.3d 1174, 1181 (Conn. App. Ct. 2018) (town cannot bring negligence per se claim against abusive animal shelter for added municipal expense caused by tending to mistreated animals). The fact that this case involves a *foreign* government makes it even easier. The bare conclusory assertion that Mexico "is within the class intended to be protected by the statutes" (Compl. ¶ 524) fails to satisfy federal pleading standards. *See Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### 2.    The Negligent Entrustment Exception Does Not Apply

Another narrow exception in the PLCAA is "an action against a seller for negligent entrustment. . . ."  Plaintiff alleges that defendants "knew or reasonably should have known that the purchasers to whom it sold its guns engaged in unlicensed dealing in firearms … [and] that these individuals were coconspirators in trafficking the guns to Mexico." Compl. ¶ 275. There are no detailed factual allegations concerning the persons to whom the firearms were allegedly negligently entrusted.  The prior paragraphs of the Complaint are incorporated by reference, and presumably Plaintiff is referencing its allegations that certain persons, not associated with any of the defendants, were charged with and/or pled guilty of various firearms related offenses. *Id*. ¶¶ 55-117. These allegations are wholly unsatisfactory to sustain a negligent entrustment claim against any of the defendants.

Negligent entrustment is defined in the PLCAA as:

> the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

15 U.S.C. § 7903(5)(B). There are no facts pled in the Complaint to satisfy this exception.

LORBER  GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

Further, the PLCAA's negligent entrustment exception only applies when "the person to whom the product is supplied" actually uses the "product in a manner involving unreasonable risk of physical injury to the person or others." 15 U.S.C. § 7903(5)(B). There are no facts pled that any of the persons who directly purchased the firearms from the defendants used any of those firearms to injure themselves or others – only that several persons removed from the initial purchasers are the ones using the firearms to harm the Plaintiff and its citizens in Mexico. Mexico cannot satisfy the PLCAA's negligent entrustment exception.

The PLCAA also states that "no provision of this chapter shall be construed to create a public or private cause of action or remedy."  15 U.S.C. § 7903(5)(C). Accordingly, the Complaint must also state a valid cause of action for negligent entrustment pursuant to Arizona law to survive dismissal.  Arizona recognizes a cause of action for negligent entrustment as set forth in Restatement (Second) of Torts § 390 (1965), which provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them. *Verduzco v. American Valet*, 240 Ariz. 221, 224 (App. Div. 1 2016).

"In order to prove negligent entrustment it is necessary for the plaintiff to show ... that the **defendant owned or controlled** the motor vehicle concerned ...." *Tissicino v. Peterson*, 211 Ariz. 416, 419 (Ariz. Ct. App. 2005) (citing *Lumbermens Mut. Cas. Co. v. Kosies*, 124 Ariz. 136, 138 (Ariz. Ct. App. 1979) (emphasis added). Of course, the defendants did not own or control the firearms when they were criminally misused in Mexico.

In the firearms context, suits under Arizona's common law negligent entrustment doctrine arise solely in situations where the owner of a firearm lends it to an individual with known qualities, which make their possession of the firearm dangerous. *See Tissicino,* 211 Ariz. at 416 (negligent entrustment action was brought against mother whose adult son shot victim with gun she provided); *see also Martin v. Schroeder*, 209 Ariz. 531 (Ariz. Ct. App. 2005) (proceeding under negligent entrustment theory against parents who had purchased gun used in

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

the shooting and had provided it to shooter knowing he was a drug abuser). Here, there is no relationship between the defendants and the criminals using the firearms in Mexico.

Further, the application of Arizona's negligent entrustment doctrine has not been extended to a sellers of goods. The closest precedential authority pertains to automobile rental services, but these cases are clearly in line with the history of negligent entrustment pertaining to the use of automobiles. *See Tellez v. Saban*, 188 Ariz. 165 (Ariz. Ct. App. 1996); *Christy v. Baker*, 7 Ariz. App. 354 (Ariz. Ct. App. 1968).

The Supreme Court of Texas recently issued a decision directly on point. *In re Academy, Ltd*, 625 S.W.3d 19 (Tex. 2021). This case arose out of the 2017 Sutherland Springs church shooting. Plaintiffs brought suit against Academy Sports + Outdoors, a sporting goods and firearms retailer, claiming, among other things, that it "supplied the rifle to [the shooter] with reason to know that he was likely to use it in a manner involving unreasonable risk of harm." *Id.* at 30. The court started its analysis of the negligent entrustment claim with the following, "Texas law on negligent entrustment developed in the context of entrustment of automobiles…" *Id.* While Texas courts did expand this theory to other types of property, including firearms, just like the Arizona courts have done, Texas would not extend this theory of liability beyond a bailment situation, where ownership was not transferred. The following from the Texas Supreme Court explains the rationale for restricting the use of the negligent entrustment doctrine in this way:

> In *Rush v. Smitherman*, we confirmed that "liability for negligently entrusting a vehicle to an unlicensed driver is a part of the law of bailments, but not of the law of sales or gifts." We explained: "A bailor entrusts, for what he entrusts is his. But a vendor does not entrust; he sells his chattel." "As between seller and purchaser, when the accident occurred, the seller had no right to possess or control the car." The courts of appeals have consistently followed *Rush* and held that "negligent entrustment does not apply to the sale of a chattel.

*Id.* at 31 (citations omitted) (emphasis added).

In refusing to extend this doctrine to the sale of goods, the Supreme Court of Texas reasoned, "the basis for imposing liability on the owner of the thing entrusted to another is that ownership of the thing gives the right of control over its use." *Id.* (citation and internal

Lorber, Greenfield & Polito, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

quotations omitted). The Court held: "[E]xtending a common-law negligent-entrustment claim to a sale of chattel, which results in the seller's relinquishing control over the very thing that is subsequently used in a manner that causes harm, contradicts that reasoning." *Id.*

Just like in *In re Academy*, none of these defendants could exert any type of control over the firearms once they were sold to the initial purchasers. Therefore, imposing liability on the defendants for negligent entrustment, especially without any limitations on the number of transactions, legal and illegal, between the sale and the eventual misuse in another country, is akin to imposing absolute liability on a product seller for any misuse by a buyer at any time in the future. This is the type of liability that the PLCAA specifically sought to avoid.

### 3.     The Predicate Exception Does Not Apply

The "predicate exception" allows a seller of firearms to be sued if it "knowingly violated a State or Federal statute *applicable to the sale or marketing of* [*firearms*], and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii) (emphasis added).

The PLCAA provides examples of the type of firearms-specific statutes Congress considered "applicable to" the sale and marketing of firearms. It identifies laws:

- Requiring manufacturers and sellers to keep "record[s] . . . with respect to [firearms]." *Id.* § 7903(5)(A)(iii)(I).

- Prohibiting manufacturers and sellers from aiding, abetting, or conspiring with any person in making a "false or fictitious . . . statement" that is "material to the lawfulness of the sale or other disposition of a [firearm]." *Id.*

- Prohibiting manufacturers and sellers from aiding, abetting, or conspiring with anyone "to sell or otherwise dispose of a [firearm], knowing, or having reasonable cause to believe, that the actual buyer of the [firearm] was prohibited from possessing or receiving a firearm." *Id.* § 7903(5)(A)(iii)(II).

To satisfy the predicate exception based on an "applicable" firearms law, a plaintiff must show that a defendant knowingly violated a state or federal statute that "appli[es]" specifically to the "sale or marketing of [firearms]." *Id.* § 7903(5)(A)(iii). The PLCAA does not allow claims

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

16

based on *generally applicable* laws, such as public nuisance and consumer-protection statutes to satisfy the predicate exception, because those are the types of claims that the PLCAA was enacted to foreclose.

### a. The predicate exception recognizes only firearms-specific statutes.

The plain text, structure, and context of the PLCAA show that the predicate exception applies only to claims based on firearms-specific laws, not laws of general applicability. Read in isolation, there are only two textually permissible readings of a "statute applicable to the sale or marketing of" firearms. 15 U.S.C. § 7903(5)(A)(iii). First, it could refer broadly to all laws that are "[c]apable of being applied" to firearms sales and marketing. BLACK'S LAW DICTIONARY (11th ed. 2019). Or, more narrowly, the term "applicable" could mean—especially in reference to "a rule, regulation, law, etc."—"affecting or relating to a particular person, group, or situation; having direct relevance." *Id.* On this reading, the predicate exception applies only to claims under laws that specifically regulate firearms *in particular*.

When the predicate exception is read in context, the narrower meaning is clearly the right one. It is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993). Here, all of the relevant context—including the statutory structure, purpose, and history—confirm that the predicate exception is narrowly limited to firearms-specific laws.

*First*, a broad reading of the predicate exception would allow precisely the type of claim that Congress sought to bar when it enacted the PLCAA. Lawsuits had been commenced at that time based on generally applicable statutes prohibiting "negligent marketing," "public nuisance," and "deceptive trade practices." *See* Lytton, 65 Mo. L. Rev. at 6-50. One lawsuit that Congress focused on, in particular, involved statutory claims for public nuisance and negligence in California. *See Ileto*, 565 F.3d at 1137 (noting that Congress considered "this very case as the type of case they meant the PLCAA to preempt"). For this reason, the Ninth Circuit concluded that the predicate exception cannot sensibly be interpreted to "cover[] all state statutes that *could*

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

*be applied* to the sale or marketing of firearms." *Ileto*, 565 F.3d at 1135-36.  That would violate the cardinal rule that statutory provisions should not be read in a way that "would frustrate Congress' manifest purpose." *United States v. Hayes*, 555 U.S. 415, 427 (2009).[6]

*Second*, in keeping with the above, the predicate exception should be read narrowly because it is an exception to an intentionally broad rule—that firearms companies should not be held liable for harms caused by the criminal acts of third parties. *See* 15 U.S.C. §§ 7902(a), 7903(5)(A). The Supreme Court has instructed that when Congress enacts "a general statement of policy [that] is qualified by an exception," courts should "read the exception narrowly in order to preserve the primary operation of" the general rule. *Comm'r v. Clark*, 489 U.S. 726, 739 (1989).  To apply an exception broadly beyond those situations that are "plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

*Third*, in the text of the statute itself, Congress concluded that firearms companies should be protected because they are already regulated by an extensive array of *firearms-specific* laws. In particular, Congress noted that firearms sales and manufacturing are already "heavily regulated by Federal, State, and local laws," including "the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act." 15 U.S.C. § 7901(a)(4).  After referring to those firearms-specific laws, Congress then stated—in the next sentence—that companies engaged in the "lawful" manufacturing and sale of firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended." *Id.* § 7901 (a)(5).

*Fourth*, Congress made the point especially clear by providing three examples in the text of the predicate exception, *all* of which are firearms-specific. As noted above, the examples

---

[6] The Second Circuit reached the same conclusion, explaining that the predicate exception cannot refer to all general laws that are merely "capable of being applied," because that would make the exception "far too[]broad." *City of New York*, 524 F.3d at 403.  It "would allow the predicate exception to swallow the statute, which was intended to shield the firearms industry from vicarious liability for harm caused by firearms that were lawfully distributed into primary markets." *Id.*

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

refer to laws regarding the keeping of firearms-related records; the sale or other disposition of firearms; and knowingly selling or otherwise providing firearms to those prohibited from possessing them. *Id.* § 7903(5)(A)(iii)(I)-(II). In light of these firearms-specific examples, the meaning of the predicate exception is "narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008).

*Finally*, a broad reading of the predicate exception would violate the canon against superfluity. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001). For example, if the exception allowed claims based on the violation of any generally applicable statute, then there would be no need for the separate exception for "negligence per se," which occurs when a defendant violates a statute intended to protect a class of persons of which plaintiff is a member. 15 U.S.C. § 7903(5)(A)(ii).

### b.    *Mexico has not plausibly alleged a violation of any firearms-specific statute.*

The only claim in Mexico's Complaint that even mentions any potentially relevant statutory violation is the "negligence per se" claim (Count Four), which asserts in vague and conclusory terms that "Defendants violated statutory duties." Compl. ¶ 285. In any event, while the Complaint mentions various firearms-specific statutes, an analysis of each of these assertions shows that the Complaint fails to state a plausible claim that defendants violated any of them.

*Initially*, the Complaint asserts that defendants violate U.S. federal laws and regulations related to "straw sales." Compl. ¶¶ 131, 138-143. However, other than citing various statutes and regulations applicable to the sale/transfer of firearms, at no time does Plaintiff actually allege that any defendant violated any specific law causally related to the injuries alleged. Plaintiff simply recites a litany of laws that start with the requirement to have a federal firearms license, then goes through laws/regulations pertaining to the legal means to transfer a firearm, including background checks and paperwork requirements, and then concludes with statutes and regulations related to post-sale paperwork obligations. *Id.* ¶¶ 132-144. Plaintiff then includes a conclusory allegation that "each Defendant systematically violated the foregoing legal

obligations." *Id.* ¶ 146.  This lack of factual support is clearly insufficient to plead a plausible claim that any defendant violated a statute applicable to the sale or marketing of firearms. *See Iqbal*, 556 U.S. at 678-80.

*Next*, Plaintiff alleges that defendants somehow violated Mexican and U.S. laws related to exporting firearms from the U.S. into Mexico. Compl. ¶¶ 147-161. However, there are no allegations in the Complaint that any defendant exported firearms to Mexico.  All of the alleged sales cited in the Complaint occurred at defendants' storefronts within Arizona. This is clearly insufficient to plead a plausible claim that any defendant violated a statute applicable to the export of firearms.

*Finally*, the Mexican government claims that defendants violated (or aided and abetted the violation of) various Mexican statutes. Compl. ¶¶ 147-153. But even putting aside the lack of any factual allegations supporting this claim, the PLCAA's predicate exception does not allow claims based on Mexican statutes, since it only allows certain claims based on alleged violations of "State or Federal statute[s]." 15 U.S.C. § 7903(5)(A). The PLCAA's predicate exception applies only to knowing violations of *U.S.* firearms-specific statutes.

### c.   The predicate exception does not allow claims based on generally applicable consumer-protection statutes.

Arizona's Consumer Fraud Act, A.R.S. § 44-1521, *et seq*. (Count Seven) is not directed to the "sale or marketing of firearms," thus it cannot serve as a predicate exception under the PLCAA.  If generally applicable consumer protection statutes were to fit the exception, then so must all other generally applicable statutes—including the public-nuisance statutes and negligence statutes that Congress specifically sought to foreclose and which the Ninth Circuit has determined are inapplicable. *Ileto*, 565 F.3d at 1137. Accordingly, the only textually permissible way to limit the scope of the predicate exception—and to avoid swallowing the PLCAA's general rule—is to confine the exception to laws that specifically regulate the sale or

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

marketing of firearms.[7] As such, Arizona's CFA cannot satisfy the predicate exception because the statute regulates commercial transactions *in general* and it contains no provisions specifically regulating firearms.

### d. Mexico cannot satisfy PLCAA's proximate-cause requirement.

Even if Mexico did state a claim based on a statutory violation within the predicate exception, it cannot show that "the [federal or state statutory] violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). All of Mexico's claims fail due to the overall lack of proximate cause between defendants' alleged conduct and the Mexican government's alleged injuries.

The Complaint also fails to show how any specific injury to Mexico was proximately caused *by the violation of a specific statute* recognized by the predicate exception. Mexico cannot merely allege that: (1) the defendants violated firearm-specific statutes; and (2) those same defendants, in some vague manner, proximately caused injury to Mexico. Rather, it must show that its alleged injuries flowed *from* the excepted statutory violations. Congress's chosen language clearly supports this reading. It requires that the "*violation* [of the statute be] a proximate cause," and not merely that the *violator* of the statute be a proximate cause. 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). And that distinction makes perfect sense. Otherwise, plaintiffs could closely scrutinize firearm sellers for minor statutory violations, and then use such violations as the "predicate" to eviscerate Congress's intent and defeat the PLCAA's function.

---

7 Mexico may seek to rely on *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 325 (Conn. 2019), in which the Connecticut Supreme Court, in a 4-3 decision, let stand a claim against a firearm manufacturer under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Sta. §§ 42-110a, *et seq*. The court in *Soto* was willing to "assume" that "the predicate exception cannot be so expansive as to fully encompass laws such as public nuisance statutes insofar as those laws reasonably might be implicated in any civil action arising from gun violence." *Id*. at 311-12. But, nevertheless, the court held the predicate exception was satisfied by a CUTPA "wrongful marketing claim" alleging that "one specific family of firearms sellers advertised one particular line of assault weapons in a uniquely unscrupulous manner, promoting their suitability for illegal, offensive assaults." *Id*. at 312.

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

The Complaint does not plead the required connection between any alleged statutory violation and any alleged injury. It merely lists statutes that defendants allegedly violated (or aided and abetted in violating), and separately lists various diffuse harms stemming from people using firearms in Mexico. Absent are any factual allegations linking any specific statutory violation to any specific injury. In fact, in most of the transactions cited in the Complaint, firearms that were allegedly straw purchased were recovered at the border before entering Mexico, Compl. ¶ 75, firearms recovered in Mexico were not connected to any of the named defendants, *id.* ¶ 65, or firearms were simply recovered in Mexico with no connection to a violent crime, *id.* ¶ 73.

### III.   The Complaint Should Be Dismissed for Lack of Proximate Causation

Even if the Complaint is not barred by the PLCAA, Plaintiff's lawsuit should be dismissed for lack of proximate cause because (1) the alleged injuries are too remote, (2) the intervening intentional criminal acts break the chain of causation, and (3) the Plaintiff's claims for injury are derivative.

*First*, whether a defendant's alleged misconduct is a "proximate cause of the plaintiff's injury entails a judgment, at least in part policy based, as to how far down the chain of consequences a defendant should be held responsible for its wrongdoing." *Morgan v. Chao*, No. CV-16-04036-PHX-DLR, 2017 WL 3215647, at **1-2 (D. Ariz. July 28, 2017) (citing *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 178 (2007)). Thus, "proximate cause requires 'some *direct* relation between the injury asserted and the injurious conduct alleged." *Morgan*, 2017 WL 3215647, at *2 (emphasis added) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011)); *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Further, "the traditional principle of proximate cause suggests that the use of words such as 'remote,' 'tenuous,' 'fortuitous,' 'incidental,' or 'consequential' to describe those injuries will find no remedy at law." *Blue Shield of Va. v. McCready*, 457 U.S. 465, 477 n. 13 (1982).

Proximate cause "generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017); s*ee also Fields v. Twitter, Inc.*, 881 F.3d 739, 744 (9th Cir. 2018); *Stepper v. England*,

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

22

14 F. App'x 859, 860 (9th Cir. 2001); *Morgan*, 2017 WL 3215647, at *2. "A link that is too remote, purely contingent, or indirect is insufficient." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010); *see Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019) (finding the relationship between the alleged unlawful conduct and the claimed injuries was "too attenuated to support a finding of proximate cause").

Here, there are numerous steps in the alleged chain of events that involve an indeterminate number of non-parties and illegal conduct. The purchasers of firearms would have to illegally provide the firearms to others; these persons would then illegally smuggle the firearms across the Mexican border (utilizing an unknowable number of intermediaries); the firearms would then have to be eventually purchased or procured by members of the drug cartels; these drug cartel members would then have to use the firearms in violent attacks; these criminal attacks would have to result in injury to persons or property; and then the Mexican government would have to sustain some quantifiable derivative financial impact. Such a remote and attenuated chain of causation is too "long and tortuous" to sustain liability. *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 423 (3d Cir. 2002).

*Second*, the intervening intentional criminal acts of cartel members constitute a superseding cause that precludes proximate cause in this case. Proximate cause is "that which, in a material and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Flowers v. K-Mart Corp.*, 126 Ariz. 495, 498 (Ariz. Ct. App. 1980). Generally, there is no basis for liability when the claimed injuries were "actually brought about by a later cause of independent origin." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996). An intervening cause is an independent cause that intervenes between defendant's original alleged act and the final result and is necessary in bringing about that result." *Cecala v. Newman*, 532 F.Supp.2d 1118, 1138 (D. Ariz. 2007). Superseding causes are those intervening causes that are "unforeseeable and may be described, with the benefit of hindsight, as extraordinary." *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990); *Ontiveros v. Borak*, 136 Ariz. 500, 505-06 (1983).

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

In this regard, a criminal act is typically a superseding cause of the harm, even in situations where the earlier negligence afforded the third person an opportunity to commit the crime. *Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 266 (Ariz. Ct. App. 1989) (holding that the criminal act of using another person's handgun to shoot someone was a superseding cause as a matter of law). This is particularly the case where – as here – there are numerous independent intervening criminal acts of third parties. *See Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018) (explaining that there were "numerous criminal intervening acts"); *see also City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1136-37 (Ill. 2004) (finding no proximate cause because the gun violence committed by third parties was "several times removed from the initial sale of the individual weapons"). Mexico's liability claims against the defendants rely on a string of unlawful acts of an indeterminate length. This chain of unlawful intervening acts by unknown third parties firmly establishes that there is no proximate cause as a matter of law.

*Third*, Mexico's claims are clearly derivative and, therefore, a lawsuit cannot be maintained. Thus, "where a plaintiff complains of injuries that are wholly derivative of harm to a third party, plaintiff's injuries are generally deemed indirect and as a consequence too remote, as a matter of law, to support recovery." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999). For example, in *Ganim v. Smith & Wesson*, a city sued firearm manufacturers and sellers claiming that their sales practices led to violence that injured residents of the city and caused the government to incur costs. 780 A.2d 98, 113-15 (Conn. 2001). However, the lawsuit was dismissed because the alleged harms were "too derivative of the injuries to others" and injuries "that are wholly derivative of harm to a third party . . . are generally deemed indirect and as a consequence too remote as a matter of law." *Id.* at 122, 129-30.  Mexico's Complaint should be dismissed under this rationale as well.

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

**IV.    Plaintiff is an Improper Party to Bring a Claim Under the Arizona CFA**

Aside from a clear lack of proximate cause (as noted above),[8] Mexico alleges that defendants violated the CFA. A substantive review of this claim under the predicate exception or as a separate form a relief is not necessary because Mexico lacks standing to bring this claim. Count Seven of the Complaint alleges a violation of A.R.S. § 44-1522, which states:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

The purpose of the CFA "is to provide **injured consumers** with a remedy to counteract the disproportionate bargaining power often present in consumer transactions." *State Farm Fire & Cas. Co. v. Amazon.com Inc.*, No. CV-17-01994-PHX-JAT, 2018 WL 1536390, at *4 (D. Ariz. Mar. 29, 2018) (emphasis added). "To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise [...] An injury occurs when a consumer relies [...] on false or misrepresented information." *Kuehn v. Stanley*, 208 Ariz. 124, 129 (Ariz. Ct. App. 2004). "A consumer will succeed on a private cause of action if they are able to prove 'a false promise or misrepresentation made in connection with the sale or advertisement of merchandise **and the hearer's** consequent and proximate injury." *State Farm*, 2018 WL 1536390, at *4 (emphasis added). In this case, Mexico is neither an injured consumer nor the "hearer" of the alleged misrepresentation.

---

8 The lack of proximate cause with respect to the CFA claim is readily apparent. Nowhere in the Complaint is it alleged that any member of a Mexican "cartel" ever saw advertisements from the named Arizona retailers, nor is there any allegation that the advertisements caused cartel members to commit criminal acts in Mexico with any firearm obtained from the defendants. Indeed, defendants are hard pressed to understand how any advertisements by Arizona firearms retailers caused the cartels to criminally use firearms.

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

While recent Arizona precedent has departed from a strict standard requiring a transaction or sale between the parties, there still is a requirement that a false representation be made from one party to another. *See Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19 (Ariz. 2016) (despite the absence of a direct transaction, plaintiff had stated a claim under the CFA because she alleged that defendant made an affirmative misrepresentation to her); *see also, State Farm,* 2018 WL 1536390, at *5 (CFA claim dismissed because plaintiff did not allege any facts to show that defendant made a misrepresentation to plaintiff in connection with the sale of goods).

Here, Mexico has not and cannot plead sufficient facts to classify it as a "consumer" under the standard developed under the CFA. The allegedly deceptive marketing and advertising alleged by Mexico would have to have been made to Mexico, and the harm suffered must be proximately related to the alleged false or misrepresented information. Mexico makes no description of any false or misrepresented claims made to it by defendants, either directly or indirectly, instead alleging purported misrepresentations to the non-party criminal buyers, traffickers and/or cartels. Because Mexico is not a consumer who relied on defendants' alleged misrepresentations, it cannot assert a claim under the CFA.

Furthermore, while a private cause of action utilizing the CFA has been recognized by the Supreme Court of Arizona, this judicially created remedy should not extend to foreign governments. In *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573 (Ariz. 1974), the court acknowledged that the statute did not expressly create a private cause of action, but found that, "**a person** who has been damaged by the practices declared to be unlawful may exert a claim by reason of such acts." *Id.* at 576 (emphasis added). While not directly in context, the CFA defines "person" as "any natural person or the person's legal representative, any partnership or domestic or foreign corporation, any company, trust, business entity or association or any agent, employee, salesman, partner, officer, director, member, stockholder, associate or trustee." Because Mexico is clearly not a "person" under the definition provided in the CFA, it should not be afforded the ability to be a judicially created "person" to enforce the provisions of the CFA. The only proper plaintiffs to bring an action under the CFA would be the Arizona Attorney General or a "person" as defined in the CFA.

Additionally, the advertisements in the Complaint plainly do not violate the CFA. Mexico complains about the types of firearms that are sold and the fact that some defendants offer firearms training courses. However, there is nothing within these advertisements that are false or misleading. Selling lawful firearms, describing their features, and/or offering training courses cannot be the basis for CFA claim.[9]

Finally, permitting a CFA claim to be pursued in this context would violate the First Amendment. To be clear, the advertisements identified in the Complaint are for firearms that can lawfully be sold under federal and state law and the other identified advertisements are for training courses, which are also not prohibited under the law. It is unquestioned that the First Amendment protects advertisements for lawful products. *See Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 377 (2002); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 571 (2001). For all of the foregoing reasons, Mexico's CFA claims should be dismissed.

## V.      Mexico's RICO Claims Must be Dismissed

Mexico lacks standing to assert RICO claims and the predicate acts alleged against the defendants are non-actionable and insufficient as a matter of law. Any injury allegedly sustained by Mexico arose and occurred by virtue of wrongful conduct that took place in Mexico, the effects of which resulted and were incurred in Mexico, and in no way constitute an injury to Mexico's "business or property." Mexico's RICO claims are not pled with specificity required by Rule 9(b) and the Complaint constitutes an impermissible "shotgun pleading" that fails to plead any plausible claims for relief. Finally, Mexico seeks equitable relief, which is not available to private civil RICO plaintiffs.

---

9 It is also worth noting that claims under the Arizona consumer fraud act are subject to a one-year statute of limitations. A.R.S. § 12-541(5); *Murry v. W. Am. Mortgage Co.*, 124 Ariz. 387, 390 (Ariz. Ct. App. 1979). The statute begins to run "when the consumer knows whose products were involved and that the products were not performing as expected." *Gustafson v. Goodman Mfg. Co. L.P.*, No. 3:13-cv-8274-HRH, 2014 WL 1669069, at *5 (D. Ariz. Apr. 28, 2014). Here, Mexico fails to allege these critical factors to determine an accrual date for this claim.

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

### A.   Mexico Lacks Standing to Assert Civil RICO Claims

Mexico boldly asserts civil RICO claims against the law-abiding defendants without having any viable RICO injury to its "business or property" as required by 18 U.S.C. § 1964(c). To have statutory standing, "a civil RICO plaintiff must show: (1) that [its] alleged harm qualifies as injury to his business or property; and (2) that [its] harm was by reason of the RICO violation, which requires the plaintiff to establish proximate causation." *Smagin v. Yegiazaryan*, 37 F.4th 562, 566 (9th Cir. 2022) (citations omitted); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The Complaint fails to establish that either of these prongs are met or could plausibly be met. Mexico's allegations of harm to the Mexican public at large and claims that do not directly link the harm to the RICO violation will not suffice.

### 1.   Mexico Fails to Allege Actionable Financial Loss

The Ninth Circuit requires that a plaintiff asserting injury to its business or property to allege "concrete financial loss." *Oscar v. Univ. Students Coop. Ass'n.*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc) *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1131 (2006). Financial loss alone is insufficient and alleged injuries which are merely the consequential or downstream effects of foreign harm are not recoverable under Section 1964(c). "Without a harm to a specific business or property interest— a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Diaz*, 420 F.3d at 900.[10] A government entity, however, cannot rely on expenditures alone to establish civil RICO standing. *Canyon Cnty. v. Sygenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir. 2008) (holding that a government entity does not sustain a RICO injury by virtue of its expenditures on health care and law enforcement services that it provides to the public).

---

[10] In the ordinary context of a commercial transaction, a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 342 (1979).

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

The alleged "business or property" interests that Mexico asserts injury is the money it spends as a sovereign nation in furtherance of its governmental functions. *See*, *e.g.*, Compl. ¶ 247 ("The epidemic of violence…has strained the *Government's resources*, including… costs for providing, for example, extraordinary health care, law enforcement and military and services, criminal justice administration, public assistance, and other social services and public programs").[11]

However, the phrase "business or property" excludes a government's interests in their sovereign or quasi-sovereign capacities. *Canyon Cnty.*, 519 F.3d at 978. When a governmental body acts in its sovereign or quasi-sovereign capacity, seeking to enforce the laws or promote the public well-being, it cannot claim to have been "injured in [its] . . . property" for RICO purposes based solely on the fact that it has spent money in order to act governmentally. *Id.* at 977. All government actions require the expenditure of money in this sense, insofar as the government acts through public servants who are paid for their services. *Id.* If government expenditures alone sufficed as injury to property, any RICO predicate act that provoked any sort of governmental response would provide the government entity with standing to sue under Section 1964(c), which is an interpretation of the statute that the Ninth Circuit has repeatedly rejected. *See id.*; *see also City of Almaty v. Khrapunov*, 956 F.3d 1129, 1132 (9th Cir. 2020) (holding that financial loss alone is insufficient to state a RICO claim and a government entity's voluntary expenditures made in response to a criminal act "were a mere downstream effect" and "not an independent harm itself."). Mexico does not – and cannot – allege an injury to its business or property sufficient to confer standing to assert civil RICO claims against U.S. private businesses.

---

11 *See also id.* ¶¶ 248 (identifying various government-funded judicial, law enforcement, health care, and social services), 238 (referring to "tax dollars…spent on preventing and responding to violence and drug trafficking…"), 296 ("[Firearm] sales have resulted in enormous increases in the Government's expenditures, [for] … medical care, police investigations, emergency personnel, public health resources, human services, courts, prisons, and related expenses"), & 300 ("The Government's expenditure of substantial sums to pay for the associated costs resulting from the use of guns…").

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

### 2.      Mexico Fails to Allege Proximate Causation

In order to establish proximate causation, a civil RICO plaintiff must plead and prove that there is "some direct relation between the injury asserted and the injurious conduct alleged." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). Three "practical considerations" guide the court's analysis of whether the alleged violation led *directly* to the plaintiff's injuries:

> (1) "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the [RICO] violation, as distinct from other, independent, factors"; (2) "directly injured victims can generally be counted on to vindicate the law," rendering unnecessary recognition of a cause of action for those only indirectly injured; and (3) allowing recovery by indirectly injured plaintiffs "would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury . . . to obviate the risk of multiple recoveries." *Club One Casino, Inc. v. Perry*, 837 F. App'x 459, 460-61 (9th Cir. 2020) (quoting *Holmes*, 503 U.S. at 269-70).

Mexico has alleged only indirect injury resulting from the defendants' alleged predicate acts, which include straw purchasing of firearms, trafficking in firearms, mail fraud, wire fraud, and money laundering. As explained below in greater detail, the recently enacted firearms offenses do not apply retroactively and, therefore, they fail as a matter of law and cannot constitute predicate offenses.  *See*, *infra pp 32-.*

The Complaint fails to establish proximate causation for the remaining predicate offenses of mail fraud, wire fraud, and money laundering because they lack "direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. In *Holmes*, the Supreme Court applied the proximate cause requirement to preclude a RICO suit by a plaintiff whose injury was entirely contingent on the injury of direct victims. *See id.* at 271-74. Finding "the link . . . too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers," the Court concluded that proximate causation was lacking. *Id.* at 271.[12]

---

12 Subsequently, in *Anza*, the Supreme Court clarified that the *Holmes* proximate cause requirement not only bars RICO suits by derivative victims, or those whose injuries are "purely contingent on the harm suffered by" direct victims, but generally precludes recovery by those

LORBER  GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

Here, Mexico's alleged injuries (i.e., "expenses for police, emergency, health, prosecution, corrections, and other services, as well as other extensive economic losses"), Compl. ¶¶ 265, 273, 283, 287, 293, 302, 309 & 312, and defendants' alleged injurious conduct (i.e., mail fraud, wire fraud, and money laundering) are only tenuously related. This is because Mexico's damages are purely contingent on actual harm suffered by its residents as a result of Mexican criminals using firearms in Mexico. The basis of the alleged RICO violation is the defendant gun dealers' mail fraud, wire fraud, and money laundering; and the alleged harm is Mexico's increased expenditures to provide government services in its sovereign capacity. However, Mexico's alleged harm is a *direct* consequence of the Mexican "cartels" committing violent crimes involving firearms in Mexico—not the defendants' alleged mail fraud, wire fraud, or money laundering in the United States.

The Complaint conspicuously omits allegations concerning the physical acquisition of any firearms by the Mexican "cartels" that Mexico claims to have been sold by any defendant, which would have occurred *in Mexico*, presumably in violation of Mexican law. Indeed, the Complaint acknowledges that the gun violence of which Mexico complains is a consequence of the "unlicensed dealing of firearms," which would have only occurred after the federally licensed defendants lawfully sold firearms in accordance with U.S. law.[13]

### B.   The Complaint Fails to Allege a Pattern of Racketeering Activity

Mexico's civil RICO claims should be dismissed because the Complaint fails to allege a pattern of racketeering activity. The recently enacted statutes prohibiting straw purchasing of firearms (18 U.S.C. § 932) and trafficking in firearms (18 U.S.C. § 933) do not operate retroactively based on the Supreme Court's holding in *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 280 (1994). Furthermore, the remaining predicate acts alleged – mail fraud *and/or* wire

---

injuries that are only tenuously related to the RICO violation at issue. *Canyon Cnty.*, 519 F.3d at 981 (9th Cir. 2008) (quoting *Anza*, 547 U.S. at 457).

13 *See*, *e.g.*, Compl. ¶ 276 ("…gun violence is a foreseeable and likely consequence of unlicensed dealing of firearms.").

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

fraud, and money laundering – are insufficiently pled and fail to establish a pattern of racketeering activity.

### 1.    18 U.S.C. §§ 932, 933 Do Not Apply Retroactively

When a claim implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach, *Landgraf*, 511 U.S. at 280, and there is a presumption against retroactive application of legislation. *Id.* at 265; *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 207 (1988). If Congress has made its intent express, the statute should be applied accordingly. *Scott v. Boos*, 215 F.3d 940, 943 (9th Cir. 2000). If not, the second step requires an examination of whether the statute has retroactive effect. *Id.* A statute has a retroactive effect if applying it would (a) impair rights a party possessed when he acted, (b) increase a party's liability for past conduct, or (c) impose new duties with respect to transactions already completed. *See Landgraf*, 511 U.S. at 280. If the statute would operate retroactively, the traditional rule is that it does not govern retroactively absent clear congressional intent.[14]

On June 25, 2022, President Joe Biden signed into law the Bipartisan Safer Communities Act (S. 2938; P.L. 117-159). *See* Compl. ¶¶ 143, 159. This law amended the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921 *et seq.*, to include new statutory offenses for straw purchases of firearms (§ 932) and firearm trafficking (§ 933). Section 1961(a) of the RICO statute was also amended to include Sections 932 and 933 as predicate acts constituting "racketeering activity" under the statute. *See* Compl. ¶ 181.

Mexico claims that defendants engaged in a pattern of racketeering activity involving straw purchasing and trafficking in firearms in violation of Sections 932 and 933. Compl. ¶¶ 197-204. In support of its allegations, Mexico asserts predicate offenses for violations of these

---

14 *See id.* "[A] requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Id.* at 268; *see also id.* at 272-73 ("Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits.").

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

statutes based on transactions that occurred between May 6, 2017, and April 18, 2022 – all of which are prior to the enactment of the Bipartisan Safer Communities Act. Compl. ¶ 55. The presumption against retroactivity precludes application of these statutes to defendants' alleged conduct and the Complaint's allegations with respect to Sections 932 and 933 are not viable predicate offenses under RICO.

Applying *Landgraf*, Sections 932 and 933 are silent as to retroactivity and the activities alleged in the Complaint would increase defendants' liability for past conduct, and would constitute an improper retroactive application of a criminal statute.[15] Therefore, Mexico cannot pursue civil RICO claims based on predicate acts of straw purchasing and trafficking in firearms, 18 U.S.C. §§ 932 and 933, when the conduct that Mexico claims to have violated these statutes occurred prior to their effective date in June of 2022.

### 2. The Complaint's Mail Fraud and/or Wire Fraud Allegations Are Insufficiently Plead and Fail to Establish an Actionable Pattern of Racketeering Activity

The predicate acts alleged by Mexico for mail fraud *and/or* wire fraud are insufficient to show a pattern of racketeering activity required under Section 1964(c) and should be dismissed. The heightened pleading standard of Rule 9(b) applies to civil RICO claims when the predicate offenses involve fraud. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (Rule 9(b) "applies to civil RICO fraud claims."); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). When alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). Plaintiffs are required to set forth what offense a defendant allegedly committed, and Mexico fails to satisfy

---

15 While no court appears to have addressed the retroactivity of these recently enacted statutes, or the lack thereof, the U.S. Department of Justice has acknowledged in a recent sentencing memorandum that Section 932 does not apply retroactively. *See* Government's Sentencing Memorandum at 30, *U.S. v. Hutchings*, No. 19-cr-361-BAH (D.D.C. Sept. 8, 2022) (noting that "this very year, Congress passed . . . the Bipartisan Safer Communities Act . . . [and] Congress created a new penalty for trafficking firearms – 18 U.S.C. § 932(b) . . . with a fifteen-year penalty. Had the defendant committed this very crime after June 25, 2022, he would have been facing expanded penalties.").

LORBER GREENFIELD & POLITO, LLP
5930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

Rule 9(b) when it alleges that a particular transaction constituted either mail fraud **or** wire fraud; it must set forth the specific statute which it contends was violated. However, the Complaint merely identifies the type of communication associated with each transaction as "Email, Fax, or U.S (sic) Mail." Compl. ¶ 191. *See id.* ¶¶ 188-191 & 193 (referring to the use of the U.S. Postal Service and interstate wires collectively).

The elements of mail fraud and wire fraud are essentially identical: the proponent must show (1) a scheme to defraud, (2) the use of either the mail or wire, radio, or television to further the scheme, and (3) the specific intent to defraud. *See* 18 U.S.C. §§ 1341, 1343.[16] The Complaint fails to allege sufficient facts to plausibly establish that the defendants' notifications to the ATF – submitted in compliance with federal regulations – was either associated with a scheme to defraud or transmitted with a specific intent to defraud. To constitute mail fraud or wire fraud, the object of the fraud must be property in the victim's hands. *See Kelly v. United States*, 140 S. Ct. 1565, 1572-74 (2020); *see also Cleveland v. United States*, 531 U.S. 12, 15 (2000). The defendants' reports to the ATF were submitted to comply with federal regulations and were entirely devoid of any conceivable intent to defraud Mexico or otherwise deprive Mexico of its property.

While Mexico alleges that defendants' reports to the ATF were fraudulent, the communications at issue actually disclosed the specific firearms that were sold by the defendants to specific purchasers on specific dates. Communications will not support a RICO claim if they reveal sufficient facts to allow the scheme to be detected. *See*, *e.g.*, *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 204-05 (2d Cir. 2013); *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). Here, as the Complaint acknowledges, the defendants' multiple sales reports are intended "to try to prevent gun trafficking to Mexico" and the "ATF uses the information gathered from multiple sales transactions to investigate possible trafficking cases." Compl. ¶ 184. The transmittal of factual

---

16 *See U.S. v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (wire fraud); *U.S. v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003) (mail fraud); *see also U.S. v. Oren*, 893 F.2d 1057, 1060 n. 1 (9th Cir. 1990) ("The wire fraud statute is *in pari materia* with the mail fraud statute . . . and is therefore given a similar construction.").

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

information to the ATF in compliance with federal regulations revealed sufficient facts for law enforcement to investigate and detect the purported scheme that Mexico alleges and in no way constitutes mail fraud or wire fraud.

Furthermore, while the Complaint alleges that each of the defendants committed predicate offenses of mail fraud and/or wire fraud, the alleged transactions fail to constitute a pattern of racketeering activity. To plead a RICO pattern, at least two predicate acts of racketeering activity must be alleged. *See* 18 U.S.C. § 1961(5). Only *one transaction* each is alleged for two of the defendants, and *no facts are pled* to support such claims against one defendant. Compl. ¶ 191. Moreover, most of the alleged transactions involving a group of associated individual purchasers are dated within a few days of another, while the transactions involving a different group of associated individual purchasers are dated several months apart. Such sporadic instances of alleged mail and/or wire fraud transactions are isolated events and insufficient to satisfy RICO's pattern requirements.[17]

### 3. The Complaint's Money Laundering Allegations Are Insufficiently Plead and Fail to Establish an Actionable Pattern of Racketeering Activity

Mexico's money laundering claims fail because it has not adequately pled a specified unlawful activity upon which a money laundering charge could rest. Money laundering under 18 U.S.C. § 1956 is subject to the heightened pleading standard of Federal Rule 9(b). *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918-19 (C.D. Cal. 2011); *Ayzoukian v. Wash. Mut. Bank*, No. CV 09-01103, 2009 WL 1808390, at *3 (C.D. Cal. June 24, 2009). To properly allege money laundering, Mexico must plead with specificity: (1) that each defendant knew the money at issue represented proceeds of a specified unlawful activity; and (2) that each defendant conducted the transaction with the intent to promote specified unlawful activity or knew the

---

17 *See Attia v. Google LLC*, 983 F.3d 420, 427 (9th Cir. 2020) (conduct is not sufficiently related for purposes of a RICO pattern when it does not "embrace criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.").

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

transaction was designed in whole or in part to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . ." 18 U.S.C. § 1956(a)(1).

A plaintiff asserting a RICO claim must show that the predicate offenses proximately caused its injury. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Where a plaintiff is already injured by an alleged criminal act, the subsequent use of the stolen funds or property does not constitute a new, additional injury to the plaintiff.[18]

The Complaint's scant allegations of money laundering are premised entirely on the fact that individual firearm purchasers purportedly paid for firearms with money that Mexico contends were "criminal proceeds," "unlawful proceeds," and "proceeds of narcotics sales in U.S. and Mexico." *See, e.g.*, Compl. ¶¶ 210-212. However, the Complaint does not set forth any facts to support this contention. There are no facts identifying, for example, the specific source of the funds, how the funds were obtained by the source, how the source transferred the funds, the value of the funds, the nature of any payment transactions, etc.  Rather the Complaint merely alleges that funds associated with alleged "money laundering" were received by the defendants as payment for products purchased by individual purchasers. These payments occurred prior to the purchasers' subsequent unlawful *unlicensed* sales to <u>any</u> third parties – whether they be an individual located in the United States or the "cartels" postulated in the Complaint. Moreover, because the defendants' receipt of money in exchange for retail product sales were not the "direct and proximate" cause of any harm to Mexico, the Complaint's money laundering allegations cannot constitute predicate acts for purposes of RICO. As such, the RICO claim should be dismissed to the extent it is based on this predicate act.

---

[18] *See Hourani v. Mirchev*, 943 F. Supp. 2d 159, 167 (D.D.C. 2013) ("Plaintiffs failed to allege that the domestic predicate act of post-extortion money laundering proximately caused their injuries"); *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002) ("The direct and proximate cause of [plaintiff's] loss was not [defendant's employee's] money laundering … ; it was theft.").

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

### C.      The Complaint Fails to Plausibly Allege a RICO Enterprise

Even if Mexico had standing to sue under the RICO statutes – and it does not – its RICO claims must fail because it has not plausibly alleged the existence of a cognizable RICO "enterprise" or that any of the defendants knowingly participated in such an enterprise. To allege an association-in-fact enterprise, "the complaint must describe 'a group of persons associated together for a common purpose of engaging in a course of conduct' and must provide both 'evidence of an ongoing organization, formal or informal' and 'evidence that the various associates function as a continuing unit.'" *Bredberg v. Middaugh*, No. 21-35156, 2022 WL 2662878, at *1 (9th Cir. July 11, 2022) (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 549 (9th Cir. 2007), quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "Importantly, '[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.'" *Bredberg*, 2022 WL 2662878, at *1 (quoting *Turkette*, 452 U.S. at 583).

To establish a common purpose under RICO, a plaintiff must allege facts that "demonstrate all the participants acted with the same purpose in mind pursuant to a unified agenda." *Marshall v. Goguen*, No. Cv 21-19-M-DWM, 2022 WL 1641776, at *17 (D. Mon. May 24, 2022).[19] Furthermore, the conduct of the participants "must be distinct from the 'ordinary business affairs' of the participants." *Marshall*, 2022 WL 1641776, at * 17 (citing *Fraser v. Team Health Holdings, Inc.*, No. 20-cv-04600-JSW, 2022 WL 971579, at *12 (N.D. Cal. Mar. 31, 2022) ("RICO liability must be predicated on a relationship more substantial than a routine business relationship.")).

Here, Mexico has not alleged any ascertainable structure whatsoever, let alone one distinct from the alleged pattern of racketeering activity. For example, the extent of Mexico's factual allegations with respect to the defendants' relationships with the natural person members of the separate "enterprises" is merely that of individuals making purchases from brick-and-

---

[19] *Citing Comm. to Protect Our Agric. Water v. Occidental Oil*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (finding that plaintiffs had failed to adequately allege a RICO enterprise where "plaintiffs allege only a series of disconnected incidents, each involving a subset of the overall group of defendants, with no clear indication of a unified agenda.").

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

mortar retail establishments. Mexico has failed to allege anything about how such retail transactions constituted decisions made within the enterprise, or how the alleged enterprise is distinct from its purported predicate acts. Merely using the word "enterprise" does not convert various individuals and companies into structured organizations that fall under RICO. *See Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1041 (C.D. Cal. 2011) (plaintiff failed to plead an enterprise because the alleged enterprise neither shared a common purpose nor operated as a continuing unit).

Significantly, the Complaint alleges that the individuals who purchased firearms from the defendants were themselves engaged in the unlawful *unlicensed* dealing in firearms and were coconspirators – among themselves only – in trafficking the guns to Mexico.[20] What Mexico describes is simply the existence of typical lawful firearm sales transactions. The Complaint's allegations do not come close to establishing that any of the defendants shared a "unified agenda" to engage in straw purchases or firearm trafficking transactions, or in any way participate in the exportation of firearms to Mexico. The Complaint does not contain any facts showing how each defendant acted in furtherance of an enterprise, let alone in an ongoing or continuous manner. Mexico's allegations against the defendants, however creatively worded, amount to no more than assertions that they engaged in lawful firearm sales transactions with a few customers who intentionally misled them. This hardly implicates the defendants in a RICO enterprise.

### D.     Mexico's Complaint is an Impermissible "Shotgun Pleading"

Rule 8(a) requires plaintiffs to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." And when relief is sought against multiple defendants, separate counts are generally required in order to clearly indicate to which defendant each claim

---

20 *See* Compl. at ¶ 275 ("…Defendants knew or reasonably should have known that the purchasers to whom it sold its guns were engaged in unlicensed dealing in firearms [and] … that these individuals were coconspirators in trafficking the guns to Mexico.").

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

applies. Separate counts are necessary to enable a defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims.

Mexico's Complaint is a typical example of a "shotgun pleading" that violates Rule 8(a) because for each count Mexico incorporates *all* allegations. *See*, *e.g.*, Compl. ¶¶ 261 ("The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein").[21] Such pleading tactic renders the counts replete with conclusory, vague, and immaterial facts not connected to any particular cause of action. These conclusory, vague, and immaterial facts include, for example and among many others:

- incorporation of predicate offenses allegedly committed by one defendant in the RICO counts specific to each of the four other defendants[22];

- incorporation of the previously alleged and subsequently alleged RICO enterprises into the RICO counts specific to the individual defendants[23]; and

- incorporation of a Pope Francis quote into each of the RICO counts.[24]

The Complaint improperly forces the Court and the defendants to sift through the facts presented and decide for themselves which are material to a particular claim asserted. Such pleading tactic should not be tolerated, and the Complaint should be dismissed.

## E.     The Civil RICO Statute Does Not Permit Recovery for Foreign Injuries

While this Court can and should dismiss the Complaint's RICO claims for any one or all of the reasons set forth above, Mexico's assertion of civil RICO claims is also an improper attempt to avail itself of RICO's remedies to redress foreign injuries. As Mexico and its lawyers

---

21 *See also id.* ¶¶ 266 (same), 274 (same), 284 (same), 288 (same), 294 (same), 303 (same), 310 (same), 314 (same), 320 (same), 326 (same), 332 (same), & 338 (same).

22 *Compare* Compl. ¶ 191 (mail/wire fraud allegations naming Diamondback, The Hub, SnG Tactical and Sprague's Sports, *with id.* ¶ 332 (incorporating those alleged predicate acts in the RICO count against Ammo AZ); *see also id.* ¶ 55 (chart listing sales transactions for all defendants, which is incorporated into the counts against individual defendants).

23 *See*, *e.g.*, *id.* ¶ 338 (incorporating the specific enterprises alleged against defendants SnG Tactical, Diamondback, Sprague's Sports and Ammo AZ into the RICO count against defendant The Hub).

24 *Id.* at 112.

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

are well aware, its attempted use of civil RICO in this action is an expressly prohibited extraterritorial application of the federal RICO statutes based on the Supreme Court's holding in *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016). On January 31, 2022, Mexico extensively briefed the Supreme Court's holding in *RJR Nabisco* in its opposition to the defendants' joint motion to dismiss in its previously filed action against U.S. firearm manufacturers in the District of Massachusetts. *See* Ptlf's Mem. of Law in Opp. to Joint Mot. To Dismiss, *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, No. 1:21-cv-11269-FDS, Doc. 111 at 14-20. In that brief Mexico correctly argues the following with respect *RJR Nabisco*:

> RICO's text broadly provides a claim to "any person injured in his business or property," but the Court found that such breadth "is insufficient to displace the presumption against extraterritoriality." *RJR Nabisco*, 579 U.S. at 349-50. Even though some RICO prohibitions apply to foreign conduct, "[s]omething more is needed" to overcome the presumption that "injury" in the claim-granting provision means *domestic* injury. *Id.* at 350. The Court "emphatically rejected" the notion that "injury" includes those incurred abroad merely because the statute "expressly refer[s] to '*foreign* commerce.'" *Id.* at 353 [citation omitted]. Absent express direction from Congress, RICO's unadorned reference to "injur[y]" required that a plaintiff "allege and prove a *domestic* injury to its business or property." *Id.* at 354 (emphasis in original).

Despite its unequivocal knowledge and understanding of *RJR Nabisco* over a year ago, Mexico is undeterred in its assertion of patently prohibited civil RICO claims in this action despite the Complaint expressly seeking redress of purely foreign injuries. *See*, *e.g.*, Compl. ¶¶ 247, 248, 238, 296 & 300. To be clear, Mexico has not—and cannot—allege a domestic injury to its "business or property." Any economic loss that Mexico suffered to its tangible property occurred entirely outside of the United States. And to the extent the Complaint asserts injuries to intangible property, the location of the activities giving rise to Mexico's alleged injuries were criminal actions committed by Mexican residents, all of which occurred entirely within Mexico's borders. All money spent by Mexico, and all services that Mexico provided in response to the criminal actions committed by the "cartels" in Mexico, were paid for and

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

provided by Mexico in Mexico to Mexican residents. Only Mexican residents received or could have expected to receive the benefits associated with Mexico's providing such services.[25]

### F.      Mexico's Claims of Equitable Relief is Not Actionable Under RICO

18 U.S.C. § 1964(a) provides that federal district courts may issue orders to "prevent and restrain" violations of 18 U.S.C. § 1962, however this is a private civil RICO action and Mexico is not entitled equitable relief. The equitable relief Mexico seeks under RICO includes restraining the defendants from further violations of 18 U.S.C. § 1962(c), ordering the disgorgement of profits earned by violation of Section 1962(c), appointing "a monitor to oversee [defendants'] sales practices," and providing "other appropriate relief." Compl. ¶¶ 319, 325, 331, 337 & 343. While there is no question that a U.S. government plaintiff may seek injunctive relief, the Ninth Circuit has held that injunctive relief is not available to private plaintiffs in civil RICO actions. *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986). As such, Mexico's claims for equitable relief must be dismissed.

### VI.      There are Individual Bases to Dismiss Plaintiff's Common Law Claims

Even ignoring all of the foregoing arguments, there are individual bases to dismiss Plaintiff's common law claims.

### A.      Plaintiff Fails to State a Claim for Unjust Enrichment.

Unjust enrichment occurs only when one party has and retains money or benefits that in justice and equity belong to another. *Trustmark Ins. Co. v. Bank One, Ariz., N.A.*, 202 Ariz. 535, 539 (Ariz. Ct. App. 2002). To prevail on an unjust enrichment claim under Arizona law, "a plaintiff must establish that (1) plaintiff conferred a benefit upon the defendant; (2) defendant's

Lorber Greenfield & Polito, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

---

25 Defendants suspect that Mexico has asserted RICO claims against them for purely political purposes – both to falsely accuse them of committing criminal offenses and publicly label them as alleged "racketeers," and to unjustifiably bolster Mexico's anticipated and baseless legal arguments regarding the application of the PLCAA in the context of foreign injury. This Court need not address the exterritorial application of the RICO statutes as Mexico's RICO claims can and should be dismissed for any one – or all – of the reasons proffered above.

benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit." *In re Ariz. Theranos, Inc. Litig.*, 308 F. Supp. 3d 1026, 157 (D. Ariz. 2018) (quoting *USLife Title Co. of Ariz. V. Gutkin*, 152 Ariz. 349, 353 (Ariz. Ct. App. 1986)).[26]

Here, Mexico's unjust enrichment cause of action is based upon the claim that the defendants have gained profits from sales of firearms that were eventually trafficked into Mexico and seek damages for the government's "expenditure of sums to pay for the costs" resulting from the criminal use of firearms by cartels in Mexico. Compl. ¶¶ 295-302. Simply, the Complaint fails to contain any factual allegations that, if true, could satisfy the elements of such a cause of action. There is no allegation that the government of Mexico conferred a benefit on the defendants or that it was at Mexico's expense. Moreover, the theory of unjust enrichment is equitable and, therefore, not available where there is an alternative legal remedy. *Wang*, 283 P.3d at 49.   Here, Mexico has not alleged the absence of an adequate legal remedy, which provides another basis to dismiss this claim.

### B.      The Complaint Fails to State a Claim for Public Nuisance.

Under Arizona law, public nuisances encompass any unreasonable interference with a right common to the general public. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. In Ariz.*, 148 Ariz. 1, 5 (1985). To bring a claim for public nuisance, the plaintiff must allege a "special injury," which is "damage [that is] different in kind or quality from that suffered by the public in common." *Id.*

Preliminarily, Mexico lacks standing to pursue a public nuisance claim in Arizona because it is not a member of the general public. *See Hopi Tribe v. Ariz. Snowbowl Resort Ltd. P'ship*, 245 Ariz. 397, 399-400 (2018). Additionally, Mexico has not alleged any "special injury" that would satisfy this requisite element of such a cause of action. Finally, the sale of lawful products cannot be a basis for a public nuisance claim, especially when the defendants

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

---

26 "In short, unjust enrichment provides a remedy when a party has received a benefit at another expense, and, in good conscience, the benefitted party should compensate the other." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012).

lack control over the products at the time of the alleged injury.[27] Accordingly, Mexico's claim for public nuisance should be dismissed.

### C.   Plaintiff Fails to State a Claim for Negligence and Gross Negligence.

To establish a negligence claim, a plaintiff must prove (1) a duty requiring the defendant to conform to a certain standard of care, (2) breach of that standard, (3) a causal connection between the breach and the resulting injury, and (4) actual damage. *Quiroz v. ALCOA, Inc.*, 243 Ariz. 560, 563-64 (2018). A duty of care is established by either public policy or a recognized common law special relationship. *Id.* at 565. And, there is no duty to control the conduct of a third party unless there is (a) a special relationship between the defendant and the third person which imposes a duty on the defendant to control the third person's conduct, or (b) a special relationship between the defendant and the plaintiff which gives the plaintiff a right of protection. *Bloxham v. Glock, Inc.*, 203 Ariz. 271, 274 (Ariz. Ct. App. 2002).[28]

Plaintiff's Complaint seeks to hold defendants liable for the multiple independent criminal acts of third parties, including drug cartels in Mexico. Wholly absent from the allegations is the existence of any special relationship that would permit the Mexican government to bring a lawsuit against firearms dealers in the United States.[29] Suits like this one,

---

27 *See, e.g., Camden County Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 273 F.3d 536, 538-42 (3d Cir. 2001); *State v. Lead Indus. Ass'n*, 951 A.2d 428, 456-57 (R.I. 2008); *City of Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp. 2d 882, 910-11 (E.D. Pa. 2000).

28 Duty encompasses the "sum total" of "considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Ontiveros v. Borak*, 136 Ariz. 500, 508 (1983) (*quoting* W. Prosser, *Handbook on the Law of Torts* § 42, at 324–27 (4th ed. 1971)). Further, "foreseeable danger d[oes] not dictate the existence of duty but only the nature and extent of the conduct necessary to fulfill the duty." *Id.* at 276 (internal citations omitted). Thus, "in the absence of an existing duty, foreseeability is inconsequential." *Id.* at 276-77. It is the court's role to "determine that a duty exists based on the relationship of the parties… ." *Martin*, 209 Ariz. at 536.

29 Indeed, Arizona law prohibits political subdivisions in the state from commencing civil actions against firearm sellers for damages arising from unlawful misuse of guns by third parties. A.R.S. § 12-714(B)(3). It seems counterintuitive that Arizona would prohibit such lawsuits by its own governmental entities but permit a foreign government to maintain one.

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

brought by remotely-injured parties against remote sellers, present an especially precarious duty expansion. For this reason, courts have routinely rejected claims brought by foreign governments, similar to those here, seeking to hold American tobacco companies liable for harms stemming from their citizens' use of tobacco. Even when companies directly "sell[] their products to citizens of the Foreign Governments who later become injured," the companies "incur[] no legal duty to those Foreign Governments." *State of São Paulo v. American Tobacco Co.*, 919 A.2d 1116, 1126 (Del. 2007). Allowing those governments to sue would present "complex and intricate" concerns affecting the "national economy"—concerns "better addressed by the legislature(s), not by courts applying common law principles." *Id.*[1]

Here, defendants did not owe any legal duty to the Mexican government because they are alleged to have done nothing more than sell legal firearms into the stream of U.S. domestic commerce. Unlike the tobacco companies in the cases cited above, defendants did not even make direct sales to consumers in the foreign country whose government is seeking to sue them. And the fact that the Plaintiff here is a foreign sovereign, not a direct victim of gun violence in the United States, makes the lack of duty especially clear.

On the policy side, defendants here have an even stronger argument than tobacco manufacturers, because subjecting the firearm industry to sweeping liability from foreign sovereigns would implicate serious Second Amendment questions. The Second Amendment expressly protects the right to keep and bear arms, which necessarily presupposes the right to sell them to U.S. civilians. *See, e.g.*, *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) ("regulations on the sale of firearms do not fall outside the scope of the Second Amendment"); *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011) (same).

The history of firearms law in the United States is a history of legislation and regulation continually calibrated to protect Americans' constitutional rights while also protecting people from the potential misuse of such products; the Court should not allow that incremental evolution to be upended by a lawsuit filed by a foreign power. Because "[s]tate power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute," *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 n.17 (1996), considerations of "appropriate

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

social policy," *Yakubowicz v. Paramount Pictures Corp.*, 536 N.E.2d 1067, 1070 (Mass. 1989), counsel against finding a legal duty on facts like these. Accordingly, Plaintiff's common law claims should be dismissed due to the lack of duty owed to it by defendants.

## **CONCLUSION**

For the foregoing reasons, all of Mexico's claims should be dismissed with prejudice.

## **LOCAL RULE 12.1(c) CERTIFICATION**

Movant has notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

Dated:   January 27, 2023          LORBER, GREENFIELD & POLITO, LLP

| | |
|---|---|
| Defendants Diamondback Shooting Sports, Inc., Loan Prairie, LLC d/b/a The Hub, SNG Tactical, LLC and Sprague's Sports, Inc. | Defendant, Ammo A-Z, LLC, By its attorneys, |
| */s/Louis W. Horowitz* Louis W. Horowitz LORBER, GREENFIELD & POLITO, LLP 3930 E. Ray Road, Suite 260 Phoenix, AZ 85044 and */s/ Christopher Renzulli* Christopher Renzulli (phv) crenzulli@renzullilaw.com Peter V. Malfa (phv forthcoming) pmalfa@renzullilaw.com Jeffrey Malsch (phv) jmalsch@renzullilaw.com RENZULLI LAW FIRM LLP One North Broadway, Suite 1005 White Plains, NY 10601 | */s/ Danny Lallis* Danny Lallis (Pro Hac Vice) dlallis@pisciotti.com Anthony Pisciotti (Pro Hac Vice) apisciotti@pisciotti.com Ryan Erdreich (Pro Hac Vice) rerdreich@pisciotti.com PISCIOTTI LALLIS ERDREICH 30 Columbia Turnpike, Suite 205 Florham Park, NJ 07932 (973) 245-8100 and William W. Drury wdrury@rcdmlaw.com RENAUD COOK DRURY MESAROS, PA One North Central, Ste. 900 Phoenix, AZ 85004-4117 (602) 307-9900 |

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of January, 2023, I filed the foregoing using CM/ECF which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Ryan O'Neal, Esq.
DECONCINI MCDONALD YETWIN &
LACY, P.C.
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
roneal@dmyl.com
*Attorneys for Plaintiff*

Steve D. Shadowen, Esq. (*Pro Hac Vice*)
Nicholas W. Shadowen, Esq. (*Pro Hac Vice*)
Tina J. Miranda, Esq. (*Pro Hac Vice*)
Deirdre R. Mulligan, Esq. (*Pro Hac Vice*)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
sshadowen@shadowenpllc.com
nshadowen@shadowenpllc.com
tmiranda@shadowenpllc.com
dmulligan@shadowenpllc.com
*Attorneys for Plaintiff*

Jonathan E. Lowy, Esq. (*Pro Hac Vice*)
GLOBAL ACTION ON GUN VIOLENCE
1025 Connecticut Avenue NW, #1210
Washington, DC 20036
jlowy@actiononguns.org
*Attorneys for Plaintiff*

William W. Drury, Esq.
RENAUD COOK DRURY MESAROS, PA
One North Central, Ste. 900
Phoenix, AZ 85004-4117
wdrury@rcdmlaw.com
*Attorneys for Defendant Ammo A-Z, LLC*

Anthony Pisciotti, Esq. (*Pro Hac Vice*)
Danny Lallis, Esq. (*Pro Hac Vice*)
Ryan Erdreich, Esq. (*Pro Hac Vice*)
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
apisciotti@pisciotti.com
dlallis@pisciotti.com
rerdreich@pisciotti.com
*Attorneys for Defendant Ammo A-Z, LLC*

By: */s/ Jeffrey Malsch*

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180